CARTER–MULLALY TRANSFER CO. v. BUSTOS et al. (No. 5674.)*

(Court of Civil Appeals of Texas. San Antonio. May 24, 1916. Rehearing Denied June 21, 1916.)

1. APPEAL AND ERROR ☞1060(1)—REVIEW— HARMLESS ERROR — BURDEN OF SHOWING PREJUDICE.

In an action for personal injuries, error of plaintiff's counsel in asking two jurors, who did not serve, if they represented an insurance company, was harmless, where the bill of exceptions fails to show that the question was asked in the presence and hearing of persons who afterwards served on the jury.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4135; Dec. Dig. ☞ 1060(1).]

**2. Appeal and Error ⇔1048(6)—Review— Parties Entitled to Allege Error.**

In an action for personal injuries, where plaintiff unintentionally elicited the information on cross-examination of defendant's witness that defendant was insured and there was nothing in the record tending to show that the plaintiff had any ground for anticipating what the witnesses would testify, the error was not reversible.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4145; Dec. Dig. ⇔1048(6).]

Appeal from District Court, Bexar County; W. F. Ezell, Judge.

Action by Adolfo Bustos, by his father and next friend, Joseph Bustos, against the Carter-Mullaly Transfer Company. From a judgment for plaintiff Adolfo Bustos and against plaintiff Joseph Bustos, defendant appeals. Affirmed.

Hertzberg, Barrett & Kercheville, of San Antonio, for appellant. T. H. Ridgeway, of San Antonio, for appellees.

FLY, C. J. This is a suit for damages instituted by Joseph Bustos, for himself, and as the father and next friend of his minor son, Adolfo Bustos; said damages alleged to have occurred by an automobile belonging to appellant running into and dragging the said minor, who was riding a bicycle at the corner of Houston and North Flores streets in San Antonio. The cause was tried by jury and resulted in a verdict against Joseph Bustos, but in favor of Adolfo Bustos for the sum of $1,000.

The evidence shows that Adolfo Bustos was injured through the negligence of the driver of appellant, and that he was damaged in the sum found by the jury.

[1] The first and second assignments of error are grouped, and are the only assignments presented for the consideration of this court. The first assignment complains of the action of appellees' counsel in asking two jurors whether they represented an insurance company, and the second is that the court erred in permitting appellees to ask witnesses Thomas H. Wade, Miss A. N. Goodenough, and Dr. Redmond "as to what man they talked to after the accident, and, when one of the witnesses answered that he talked to F. M. Coleman, the appellees persisted in asking who F. M. Coleman was, and the answer was that he was an insurance agent." The only proposition is:

"Where there is a persistent effort by counsel for plaintiff, in a personal injury suit, to convey to the jury a suspicion or surmise that defendant holds a policy of insurance in a company not a party to the suit, which will protect the defendant from loss in case a verdict is rendered against it, this is sufficient cause for reversal."

The first assignment of error is supported by a bill of exceptions which fails to show that the question propounded to the two jurors was asked in the presence and hearing of the persons who afterwards served on the jury, and if it be error to permit such a question to be asked, as has never been held by this court, the contrary having been held by other Courts of Civil Appeals, no harm seems to have come to appellant on account thereof. Neither of the persons to whom the question was directed served on the jury. If any court has held that the mere mention of an insurance company in a personal injury or death case is sufficient to reverse a judgment whether or not such mention had any effect on the case, it is best not to follow it, and to return to the domain of common sense and reason.

In connection with the second assignment of error, the record fails to disclose that any witness was ever asked who F. M. Coleman was, or that any witness ever stated that he was an insurance agent. No such statements are found in bills of exception or statement of facts, and the assignment has no basis in fact upon which to rest. No bill of exceptions was taken to what Dr. Redmond swore, and the word "insurance" is not mentioned in the statement of facts. No such witness as Wade testified, but we will take it for granted that Wayne was meant. A discussion of any issues sought to be raised by appellant might be pretermitted, as there is no basis in fact for the assignment; but we think the questions raised are of such vast importance, in view of the extended business done by casualty and accident insurance companies, that we have concluded to give expression to the views of this court in connection with references in a personal injury or death case to the fact that the defendant was insured.

[2] There is nothing in the record that tends to indicate that appellees, either knew that Wayne would answer that he had talked to "the insurance people," or that Miss Goodenough would, in response to the question, "Did you make a written statement?" reply:

"Yes, sir; some one came there, I think they was from the insurance company, wanting to settle the case, and asked me the extent of his injuries."

Certainly the last part of the statement was not responsive to the question, but was volunteered on the part of the witness. No effort was made on the part of appellant to show that appellees had talked to the witness, knew of what she would swear, or had instructed her as to what her answer should be in reply to the question. The witnesses were both placed on the stand by appellant, and both answers of which complaint is made were elicited on the cross-examination. Is it not more probable that appellant knew what the witnesses would swear than that the adverse party would? Appellant had consulted with the witnesses, had placed them on the stand, and had

drawn out their testimony. There is not one thing in the record tending to show that appellees had any ground for anticipating what the witnesses would testify. In the absence of such testimony, it would be going to dangerous lengths to hold that an irresponsible witness has it in his power to volunteer testimony that would destroy the case made by the plaintiff. Such ruling would place it in the power of any defendant, in cases of the same class with this, to absolutely render it impossible for a plaintiff to obtain a judgment, however just his claim might be. Appellees should not be held responsible for wrongs not emanating from, nor committed by, them, and no judgment in a case like this should ever be reversed merely upon a showing that a witness had given an answer disclosing a second defendant in the case.

We think the proposition that the judgment in any personal injury or death case will will be reversed, if it is disclosed by accident or otherwise that an insurance company is interested, is not based upon a sound rule, and we think there are few, if any, decisions so holding. No rule should ever be enforced absolutely that can be made the means of wrong and oppression, and certainly the rule in question places a dangerous instrument in the hands of every defendant. There is no intimation that it has been so used by the appellant in this case, for the record does not disclose any such state of affairs, nor does it show that appellees have deliberately disclosed the fact of insurance on the part of appellant, in order to gain or increase a verdict. It can as readily be held that it was inadvertently done, as that it was conceived by appellees and put into execution. In such a state of the record, we are not willing to extend the rule laid down on the subject, but will confine it strictly, when we enforce it at all, to cases in which it is made to appear that the plaintiff deliberately and persistently labored to inject an issue not made by the pleadings in order to gain a verdict or influence the amount of it.

Without committing this court to the policy of never reversing a judgment in which it is shown that a defendant is insured against accidents, still it appears almost farcical, in these days, when it is known to every man almost, qualified to sit on a jury, that most corporations dealing with the public, and many individuals, are insured in certain sums against liability for accidents, to hold that such insurance is a mystery from which the veil of secrecy should never be lifted, and that, if it is whispered to the jury that such insurance has been obtained, no valid verdict can be returned or valid judgment rendered. Not only is it known that most corporations and many individuals are insured, but it is also known to most intelligent, well-informed men that there is a clause in every accident policy which provides for the insurer furnishing its attorneys and conducting the defense for the insured. It may be that the insured could compromise for a lower sum than the amount of his insurance, still he must surrender his rights into the hands of the insurer and run the risk of having a larger judgment than the amount covered by his insurance rendered against him, and, while he is the one put forward to receive the buffetings of a trial, it must not be whispered that he is not the true defendant in the case. It would seem just, reasonable, and proper that if the insurance company is conducting the defense, as every reasonable man connected with the trial knows that it is doing, it should not be an act of extreme impropriety to mention the fact. Another and more sensible policy than that heretofore prevailing should be adopted by the courts in such cases. It should never be improper to disclose the true defendant in the case, and draw into the open the real rather than the fictitious party. This court is merely entering its protest against the policy that has been followed in Texas, but recognizes that the decisions of the state must be followed until it is settled differently by the court of last resort. In the meantime there will be no forced or strict interpretation of the facts, but they will be confined within the spirit as well as the letter of the law. It is puerile and absurd to continue to reverse judgments on account of the disclosure of matters to juries which in all probability they already knew. Reason seasoned with justice, common sense leavened with experience, should be the standard in the administration of the laws of the state and the enforcement of rules for the courts. It is not claimed in this case that the verdict is excessive, or that there is any evidence of passion or prejudice on the part of the jury. The naked proposition is that, independent of any injury that may have resulted to appellant by mention of an insurance company, that disclosure will work a reversal of a judgment against which no complaint is, or could be, urged. We do not think this course should be followed by this court.

The facts of this case, if the version assumed by appellant is the true one, show that an insurance company was active in approaching the witnesses, in getting statements from them, and counseling and advising with them while the trial was in progress, and, if the plaintiff dared to inquire into such conduct, a protest is made, and an appeal taken from a judgment of which no complaint is made, and a reversal is asked because a rank outsider who had been approaching appellees' witnesses had been exposed. The facts of this case show the extent to which the rule as to not exposing insurance companies can be carried, and it is full time to call a halt.

The judgment is affirmed.