362 P.2d 779

Agapito B. GARCIA, Plaintiff-Appellee

v.

Gregorio SANCHEZ, Defendant-Appellant.

No. 6711.

Supreme Court of New Mexico.

June 12, 1961.

McAtee, Toulouse, Marchiondo, Ruud & Gallagher, Albuquerque, for appellant.

Chavez & Cowper, P. Pablo Marshall, Belen, for appellee.

CHAVEZ, Justice.

This is a suit for damages sustained by plaintiff, appellee herein, when struck by appellant's automobile, while plaintiff was walking across the street or Highway 85 within the corporate limits of Belen, New Mexico. The jury found for plaintiff and judgment was entered accordingly. Defendant seeks a reversal of said judgment.

The parties will be designated as they appeared in the court below.

Plaintiff and his wife live in their tourist court located on the west side of the street or Highway 85 which runs from north to south through Belen. On the evening of September 4, 1957, at approximately 7:40 P. M., plaintiff, clad in a white undershirt and black trousers, went to call his wife who was then across the street in front of the home of Mrs. Willie Rivera. The street or highway is black-topped, 23 feet wide, with a white centerline marking. There are businesses and houses on both sides of the street in the neighborhood and vicinity of the scene of the accident. A street light is located just south of Mrs. Rivera's home and she had her porch lights on. There was also a light at plaintiff's tourist court and the lighting was good on the street. It was not dark but was getting dark. The accident did not occur on a crosswalk or intersection.

The evidence is in conflict as to the speed of defendant's car. Plaintiff's evidence indicates that defendant was driving from 40 to 45 miles per hour and that he did not decrease his speed from the time he was first seen to the point of impact, and if he did decrease his speed it was very slightly. Defendant's evidence is that his speed was only 25 or 30 miles per hour. The speed limit at the point of impact was 35 miles per hour. The road at the point of impact is straight for a distance of 150 yards to the north, whereupon it curves. Plaintiff's witnesses testified that at the time plaintiff was struck he was on the east side of the highway. Defendant could see from 100 to 150 feet ahead; he had his headlights dimmed, and he did not apply his brakes or sound his horn. He did not see plaintiff until he was very close to him, approximately five feet.

Plaintiff testified that he came out of his tourist court going east and that when he was about to cross the road he stood at the end of a fence which is west of the highway, in order to allow two or three cars to pass. The cars were going in a southerly direction. There was no traffic from south to north. Plaintiff then looked north and south and, seeing no traffic coming, started to cross the road walking normally. When he crossed the white centerline defendant's car struck him. He did not see the car until it struck him.

Defendant, who was driving in a southerly direction on said highway, testified that he was driving at a speed of approximately 25 or 30 miles per hour, his lights were on dim and he did not see plaintiff until he was very close to him, approximately five feet in front of his car. He tried to miss him by turning to the right. When defendant was asked to describe what plaintiff was doing when he first saw him he answered:

"I can't describe what he was doing, he just happened to approach in my

vision, my vision was on the on-coming cars at all times and that is my habit of driving."

Defendant could not see whether plaintiff was walking or running. There is also testimony that at the time defendant's car struck plaintiff two of the wheels of defendant's car were on each side of the centerline.

Defendant claims that the court erred in refusing to direct a verdict for defendant, or in the alternative, in refusing to enter judgment for defendant non obstante veredicto.

Defendant relies upon Button v. Metz, 66 N.M. 485, 349 P.2d 1047, as well as Sandoval v. Brown, 66 N.M. 235, 346 P.2d 551. Button v. Metz, supra, was an action for personal injuries sustained by a pedestrian when he was struck in a parking lot by defendant's backing automobile. At the close of plaintiff's evidence, defendant moved and the trial court directed the jury to find for the defendant, stating that plaintiff had not carried the burden of proof; that plaintiff had not proved his case by a preponderance of the evidence and had not proved any negligence on the part of the defendant. The trial court also remarked that appellant was guilty of contributory negligence as a matter of law. Defendant, in the case before us, also argues that plaintiff failed in his burden of proof as a matter of law that defendant was negligent, and claims further that if defendant was negligent it was not the proximate cause of the accident.

In Button v. Metz, supra, we said:

"In disposing of a motion for a directed verdict at the conclusion of the plaintiff's testimony, the first question to be resolved is whether the plaintiff has made out a prima facie case of negligence against the defendant, not whether he has proved negligence by a preponderance of the evidence. And in resolving this issue, all evidence and all reasonable inferences therefrom which tend to prove the plaintiff's case of primary negligence against the defendant must be accepted as true. All evidence which tends to weaken or disprove it must be disregarded. Ferris v. Thomas Drilling Co., 62 N.M. 283, 309 P.2d 225; Smith v. Ferguson Trucking Co., 58 N.M. 779, 276 P.2d 911; Thompson v. Dale, 59 N.M. 290, 283 P.2d 623." [66 N.M. 485, 349 P. 2d 1049.]

We further held that the proof offered was sufficient to make the issue of appellee's negligence one for the jury, stating:

"* * * A motorist must exercise care commensurate with the situation confronting him. * * *

"Reasonable men might well conclude that under the facts of this case the failure to give any warning signal was negligence on the part of appellee.

Further, the evidence establishes that during at least a part of the time appellee was backing his vehicle, he was looking at his right front fender rather than in his rear view mirror to see if anyone was behind his automobile."

We then laid down the rule as follows:

" * * * 'Once it is determined that reasonable men may differ as to whether a fact has been proved, the probative value of the evidence, and the conclusion to be drawn from it, lies in the hands of the jury.' * * *.

" * * * Again the rule of law is to the effect that only when reasonable minds cannot differ on the question and readily reach the conclusion that the plaintiff was contributorily negligent, and that his negligence proximately contributed with that of the defendant in causing the injury, that the issue of contributory negligence may be determined as a matter of law. Sandoval v. Brown, 66 N.M. 235, 346 P.2d 551; Thompson v. Anderman, 59 N.M. 400, 285 P.2d 507."

The trial judge, who refused to direct a verdict for the defendant, evidently felt that reasonable men might differ on the question of defendant's negligence, and once that was determined the matter became one for the jury to decide. Reasonable men might differ as to whether defendant failed to keep a proper lookout, or keep his automobile under proper control, and whether he exercised the care and caution commensurate with the situation confronting him. This is particularly true when we consider that defendant was driving within the corporate limits of Belen, on the main thoroughfare and in an area where there are businesses and homes on both sides of the street or highway. The time that the accident occurred and the period of the year must also be considered. Reasonable minds might differ as to whether defendant's failure to apply his brakes and sound his horn was negligence on his part. We cannot say that under the facts of the case before us that the trial court committed error under this point.

Under point II error is claimed for the failure of the trial court to direct a verdict for defendant on the ground that plaintiff's own negligence contributed to the accident.

Defendant cites Sandoval v. Brown, 66 N.M. 235, 346 P.2d 551, 554, wherein we affirmed the action of the district court in instructing the jury to return a verdict for defendant at the close of plaintiff's case on the ground that the defendant was guilty of contributory negligence. In Sandoval v. Brown, supra, we quoted from Gray v. Esslinger, 46 N.M. 421, 130 P.2d 24, as follows:

"We are not unmindful of the prevailing rule that plaintiff's contributory negligence, if any, ordinarily is a question for the jury. Notwithstanding

this general rule, however, where reasonable minds cannot differ upon the question and they come readily to the conclusion that the plaintiff was negligent and that his negligence contributed proximately with that of defendant to cause the injury complained of, it should be so declared as a matter of law. * * *"

Under the facts in Sandoval v. Brown, supra, we properly stated:

"* * * it is difficult to see how anyone can claim freedom from negligence or that such act did not contribute proximately to his injuries when he steps out into a street in front of two cars approaching so closely that he is attempting to cross in the light thrown by the cars, and at the same time is giving attention to another car parked some distance ahead, and then when aware that the cars are upon him stops in the lane of travel of these cars and is thereupon struck by one of them."

The facts in the case before us are distinguishable from the facts in Sandoval v. Brown, supra. We believe that the facts in the case before us are similar to the facts in Terry v. Bisswell, 64 N.M. 153, 326 P.2d 89, 92, wherein we quoted from Williams v. Haas, 52 N.M. 9, 189 P.2d 632, as follows:

"Whether the plaintiff has been guilty of contributory negligence bar-

ring a recovery is nearly always a question for the jury under proper instructions by the court. It is rarely the case the facts are such that the court can say as a matter of law that plaintiff is himself such an offender against the rules of the road as to deny him recovery. Yet, on occasions it does thus appear and when it does, the court should not and will not hesitate so to declare. Gray v. Esslinger, 46 N.M. 421, 130 P.2d 24, and cases cited. * * *"

We hold that under the facts of the case before us that reasonable minds might very well differ on the question of plaintiff's negligence and whether such negligence contributed proximately, with the negligence of the defendant, to cause the injury, and thus the matter is issuable before a jury.

Under point III defendant contends that the trial court erred in denying defendant's motion for a new trial on the ground of misconduct of the jury. Under this point defendant argues that the trial court committed error in three particulars, to-wit:

"1. When insurance burst upon the jury, a mistrial was in order at that time.

"2. The 'shotgun' instruction, improperly coerced the jury.

"3. The jury improperly considered the matter of insurance coverage—an

extraneous fact—in arriving at their verdict, in direct violation of the instructions of the Court."

During the course of the trial counsel for the defendant examined one Fernando Sanchez, a witness for defendant and the person who was a guest of the defendant and in his car at the time of the accident. The following took place when counsel for the defendant was questioning Fernando Sanchez:

"Q. All right, sir, will you now go back to where you were. Now, when you got back to where Agapito was lying, will you tell the jury then what you saw and observed and what you did from the time you got out of the car? A. Gregorio and I went to where he was, to see how he felt, and he said he was struck by a car, then the officers arrived and began to push the people backwards away from the man, but Gregorio remained there with him, then he told the officers to call for the ambulance.

"Q. Who? A. So that he would be taken to the hospital.

"Q. Who told the officers? A. Gregorio Sanchez.

"Q. All right, Go ahead. A. Then they said they thought they had called them and then the ambulance arrived, and they picked him up.

"Q. Who did you talk to? A. The officers did not let us be right by them. They pushed us back. But Gregorio told the officers to check the accident, because he was covered by insurance on his car.

"Mr. McAtee: If the Court please, would you ask the jury to withdraw?

"The Court: Would the jury step out, please? (Whereupon, the following proceedings were had out of the presence of the jury.)

"Mr. McAtee: I, of course warned my client on many occasions to not reveal the fact that he had insurance, in fact, the first thing I said to Mr. Osborn this morning was that he was to report that he was merely an investigator and working for us. I have a language difficulty with Mr. Fernando Sanchez, and as a consequence, I have not warned him. I am taken completely by surprise as the Court knows in his bringing this out. I think that we have the situation of a mis-trial here, and yet on the other hand, I don't want to move for a mis-trial, I mean I feel that I have got to do that which is necessary and proper for the protection of my client, and his interest, and I am beset with a point where the matter has come out, and it certainly is a ground for a mis-trial. I realize that this gentleman is my witness, I realize that I

am bound by his testimony, but I feel that it is a matter which is highly prejudicial, and that it is a situation that calls for a mis-trial.

"The Court: Well, I will say this. If you want to move for a mis-trial, I am going to overrule you, because—I think you are entitled to make the motion, and I probably should grant it, but I have felt for a long time that sometime—I am going to have to take the stand that most of these jurors are wise enough to know that everybody has insurance, or should have insurance, and sometime I am going to have to face the issue, and this might be as good a case as any, so you can preserve your error.

*   *   *   *   *   *

"Mr. McAtee: Well, I certainly would like to move at this time for a mis-trial, in order that the Court may rule on it, and we can preserve the error in the record.

"Mr. Chavez: We would also like to have the Court instruct the jury to disregard that statement made by the witness.

"The Court: Okay. The motion will be overruled. Call the jury back in. Tell the witness to make no more reference to insurance in connection with his testimony. Bring the jury back in. (Whereupon the jury was returned to the courtroom and the following proceedings were had.)

"The Court: I am going to instruct the jury to disregard the last answer by the witness, to the effect that Gregorio told the officers to check the accident because he was covered by insurance. Whether or not a person has insurance has absolutely nothing to do with determining liability in any case and the jury will completely disregard whether there is or is not insurance in any case."

The trial court also gave the following instruction to the jury:

"28. During the trial of this cause, one of the witnesses testified concerning the possibility of the defendant Sanchez being covered by insurance. At that time the Court struck such testimony from the record and asked the jury to disregard it.

"The Court further points out to the jury that under the New Mexico Financial Responsibility Act every driver of a motor vehicle is compelled to carry insurance or post adequate security in lieu thereof.

"The fact that a person does or does not have insurance is not a matter upon which you are allowed to speculate one way or the other, and further, you are not permitted to allow yourself to be influenced in bringing a verdict for or

against a defendant upon the possibility that he may or may not be covered with insurance."

The cause was submitted to the jury for deliberation at 4:45 P.M. on May 29, 1959, and the jury deliberated until approximately 8:00 P.M., whereupon the jury returned into open court and advised the court that they desired further instructions. The trial court advised the jury that he could not give them further instructions; that it would require a re-reading of all of the instructions previously given; and inquired numerically as to where the jury stood at that time. The foreman of the jury replied that the vote was seven to five. The trial court then gave to the jury the following supplemental instruction at 8:05 P.M.:

"It is your duty, as jurors, to consult with one another, and to deliberate with a view to reaching an agreement, if you can do so without violence to your individual judgment. You each must decide the case for yourself, but should do so only after a consideration of the case with your fellow jurors, and you should not hesitate to change an opinion when convinced that it is erroneous. However, you should not be influenced to vote in any way on any question submitted to you by the single fact that a majority of the jurors, or any of them, favor such a decision. In other words, you should not surrender your honest convictions concerning the effect or weight of evidence for the mere purpose of returning a verdict, or solely because of the opinion of the other jurors.

"I hope that after further deliberation you may be able to agree upon a verdict. That is why we try cases, to try to dispose of them and to reach a common conclusion, if you can do so, consistent with the consciences of the individual members of the jury, the Court suggests that in deliberating, you each recognize that you are not infallible, that you hear the opinion of the other fellow, and that you do it conscientiously with a view to reaching a common conclusion, if you can."

At 8:15 P.M. the jury returned into open court and rendered its verdict for the plaintiff.

On June 8, 1959, the following affidavit was filed with the clerk of the district court:

"Tom Morris and Gregorio Sanchez, being first duly sworn upon oath, depose and say that acting under the instructions of W. Peter McAtee they did between the dates of May 31st and June 3rd, 1959, interrogate various jurors herein in Cause No. 8351, entitled Agapito B. Garcia, plaintiff, against Gregorio Sanchez, defendant.

"James Grice stated that upon all ballots taken prior to 8:00 P.M. there were seven jurors voting for a verdict in favor of the defendant and five for a verdict in favor of the plaintiff. That said five opposing jurors, by their words and acts, were taking into consideration the fact that the defendant was insured and argued that because of such insurance the plaintiff should have judgment.

"Julian Connelley's statement was approximately the same as juror James Grice set forth above.

"Tranquilino Otero stated that the balloting was seven for the defendant and five for the plaintiff.

"That the jurors voting for a verdict for the plaintiff repeatedly made statements pertaining to the matter of insurance being involved, and that the seven jurors voting for the defendant likewise stated repeatedly that the matter of insurance could not be taken into consideration.

"It appeared that the jury was hung when one of the jurors mentioned the matter of special damages and said that it totalled $3,500.00, thereupon, the five jurors expressed themselves in favor of a judgment for the plaintiff in the amount of $3,500.00; that part of said seven jurors expressed a willingness to agree on a judgment for said plaintiff for $3,500.00 and then when the jury was about to agree on such a verdict, one of the five jurors changed his mind and began insisting on a judgment for plaintiff in the amount of $10,000.00 and refused to consider a judgment for a lesser amount, but after repeated discussion the jury finally agreed to ward a verdict in favor of the plaintiff in the amount of $10,000.00.

"That the affiants also individually talked to other jurors, but were told by such jurors that they would not answer any questions unless compelled to do so by the Court."

Defendant quotes from Theurer v. Holland Furnace Co., 10 Cir., 124 F.2d 494, 499, that:

" * * * It has been long and frequently held that in the ordinary action for damages arising out of negligence, evidence relating to liability insurance or other insurance is inadmissible because it is wholly immaterial to the main issue of negligence with resulting liability for damages, and can serve no purpose except to bias or prejudice the jury. * * *"

With the above statement of the law we have no quarrel. However, in Finck Cigar Co. v. Campbell, 134 Tex. 250, 133 S.W.2d 759, 761, it is said:

"It is a well settled rule in this jurisdiction that it is error to inform the

jury that the defendant in an action for damages for personal injuries is protected by indemnity insurance. Page v. Thomas, 123 Tex. 368, 71 S.W.2d 234; Texas Co. v. Betterton, 126 Tex. 359, 88 S.W.2d 1039; Southland-Greyhound Lines, Inc. v. Cotten, 126 Tex. 596, 91 S.W.2d 326; Texas Power & Light Co. v. Stone, Tex.Civ.App., 84 S.W.2d 738, error refused. But that rule has no application when the defendant, or one of his witnesses, voluntarily brings such information to the jury, and it is not brought through any ·fault of the plaintiff or his attorneys. Carter-Mullaly Transfer Co. v. Bustos, Tex.Civ.App., 187 S.W. 396, error refused; Red Star Coaches, Inc. v. Lamb, Tex.Civ.App., 41 S.W.2d 523, error dismissed; Williams et al. v. Long, Tex.Civ.App., 106 S.W.2d 378, error dismissed; 33 Tex.Jur. p. 278. As observed in the Carter-Mullaly case first above cited, were this exception to the general rule not recognized, the defendant would have it within his power to bring about a mistrial in all cases and the plaintiff would be unable to guard against it."

In Lambert v. Polen, 346 Pa. 352, 30 A.2d 115, 116, a motion for withdrawal of a juror was made under the following circumstances: During cross-examination of appellees' witness to statements made by appellant prior to trial, counsel for appellant asked the witness:. "Q. Was anything else said?" and the witness answered, "He said he thought the case was settled. He said he carried insurance and said he thought the case was settled." Counsel for appellant thereupon moved to withdraw a juror on the ground that this remark was improper as a reference to an insurance company being interested in the verdict, which motion was refused. The court, in passing upon the question, stated:

" * * * While the rule which forbids the introduction of evidence by plaintiff that defendant is insured against liability, will be strictly adhered to, it would be an anachronism to apply it in favor of a defendant who himself educed the evidence to which he objects, without plaintiff being in any way responsible, directly or indirectly, for its production. * * * "

See also Knapp v. Willys-Ardmore, Inc., 174 Pa.Super. 90, 100 A.2d 105; Casey v. Roman Catholic Archbishop of Baltimore, 217 Md. 595, 143 A.2d 627, 72 A.L.R.2d 893.

Appleman, Insurance Law and Practice, Vol. 21, § 12834, p. 513, states the rule as follows:

"A mistrial is generally granted only where the plaintiff's counsel or witness has deliberately or wilfully undertaken to inform the jury of insurance, such as where there is an avowed purpose and successful attempt; and not where

the information comes in incidentally in attempting to prove other facts or where the particular answer was not sought or anticipated. The rule of prejudicial error has no application where the evidence is introduced by the complaining party. * * *"

■ Since the injection of insurance in the case before us was brought out by defendant's counsel in examining his own witness, the defendant may not complain and the trial court was correct in refusing to declare a mistrial.

■ Defendant's claimed error due to what he refers to as the trial court's "shotgun" instruction is without merit. A careful reading of the supplemental instruction clearly indicates its propriety. Defendant's designation of the trial court's supplemental instruction as a "shotgun" instruction is improper and incorrect and did not improperly coerce the jury. It is always within the realm of permissible comment for trial courts, where the jury has been unable to agree, to urge the jurors to consult with one another and to deliberate with the view of reaching an agreement, without violence to the individual judgment of the juror. The trial court did not commit error in giving its supplemental instruction.

Lastly, defendant contends that the jury improperly considered the matter of insurance coverage and claims misconduct on the part of the jury. This contention is based upon the affidavit of Tom Morris and Gregorio Sanchez hereinbefore quoted in full.

Defendant directs our attention to some federal and Texas cases touching upon the question of the jury considering extraneous matters and misconduct on the part of the jury. As to the Texas cases, both in the federal and state courts, it is only necessary to say that Texas has a special rule of procedure, Vernon's Annotated Texas Rules of Civil Procedure, Rule 327, which provides that when a motion is made of misconduct of the jury it shall be the duty of the court to hear evidence upon the question and the court may grant a new trial if misconduct is proved. We do not have such a rule in New Mexico. As to the other federal cases cited by defendant, we do not believe that they are applicable or controlling.

■ In New Mexico this court has passed upon the question of whether a jury or a juror can "impeach its verdict." In McKinney v. Smith, 63 N.M. 477, 322 P.2d 110, 111, this court, speaking through Justice Lujan, said:

"The rule is established in this jurisdiction that a verdict cannot be impeached by the affidavits of jurors. Goldenberg v. Law, 17 N.M. 546, 131 P. 499. It has been followed in Murray v. Belmore, 21 N.M. 313, 154 P. 705;

State v. Taylor, 26 N.M. 429, 194 P. 368; State v. Analla, 34 N.M. 22, 276 P. 291; and Sena v. Sanders, 54 N.M. 83, 214 P.2d 226.

"In Goldenberg v. Law, supra [17 N.M. 546, 131 P. 502], the court said: 'The rule we believe to be correct, and to be founded upon consideration of public policy, and it should not be departed from to afford relief in supposed hard cases. The reason for the rule is stated as follows, in Graham and Waterman in New Trials, Vol. 3, p. 1428 and quoted in the note to the above case: "(1) Because they would defeat their own solemn acts under oath. (2) Because their admission would open the door to tamper with jurymen after they had given their verdict. (3) Because they would be the means, in the hands of dissatisfied juror, to destroy a verdict at any time after he has assented to it." ' "

Again in Scofield v. J. W. Jones Construction Company, 64 N.M. 319, 328 P.2d 389, 392, we said:

"Nor was the appellant's position helped by his motion for a new trial where he submitted an affidavit of one of the jurors as to what went on in the the jury room in an effort to show prejudice against the appellant, and that the jurors considered matters not before them in the court room. It is no

longer open to question in this state that a juror may not impeach his verdict by affidavit or testimony after verdict. McKinney v. Smith, 1958, 63 N.M. 477, 322 P.2d 110."

The record discloses that after the matter of insurance was injected into the case by defendant the trial court, from the bench, instructed the jury to disregard the answer made by the witness to the effect that defendant told the officers that he was covered by insurance. Also, in the trial court's instructions to the jury he again admonished the jury to disregard the fact that a person does or does not have insurance, and further instructed the jury that they were not permitted to be influenced in bringing a verdict for or against the defendant upon the possibility that he may or may not be covered by insurance. The court also pointed out to the jury that under the New Mexico Financial Responsibility Act (1953 Comp. § 64–24–1 et seq.) every driver of a motor vehicle is compelled to carry insurance or post adequate security in lieu thereof.

For a very enlightening discussion upon the question of disclosure of insurance coverage, the matter of financial responsibility, and involving the question of parties to an automobile collision carrying insurance, see Runnacles v. Doddrell, 1960, 59 N.J.Super. 363, 157 A.2d 836. See also McCormick on Evidence, (1954), § 168, p. 357; Dickinson Law Review, (1960), Vol. 65, pp. 19–33.

**406**

Finding no error in the record, the judgment will be affirmed.

It is so ordered.

COMPTON, C. J., and NOBLE, J., concur.

CARMODY and MOISE, JJ., not participating.