444 P.2d 990

Harvey W. FORT, Administrator of the Estate of Albert Anton Neller, Jr., Deceased, and Albert Neller, Petitioners,

v.

Honorable Caswell S. NEAL, Judge of the District Court of Eddy County, New Mexico, Respondent.

No. 8693.

Supreme Court of New Mexico.

Sept. 9, 1968.

480

Hinkle, Bondurant & Christy, Roswell, for petitioners.

Donald S. Bush, Artesia, McCormick, Lusk, Paine & Feezer, Carlsbad, for respondent.

## OPINION

MOISE, Justice.

The petitioners herein are defendants in an action filed in Eddy County, New Mexico, wherein damages are being sought as the result of the deaths of two persons and injuries to a third, allegedly resulting from the negligence of petitioner Fort's decedent while riding as passengers in an automobile being driven by him owned by petitioner Neller.

Plaintiffs, in the district court, moved for and obtained an order requiring petitioners to disclose the name of the public liability insurance carrier and policy limits of its insurance available in connection with said accident and the damages resulting therefrom. Petitioner then sought and we issued our alternative writ of prohibition directing respondent to take no action to implement the order requiring disclosure.

On oral argument petitioner expressed no objection to divulging the name of the interested public liability insurance carrier, and did disclose its name. However, he persists in his position that he not be required to disclose the limits of his public liability insurance. We thus are presented with a single question of whether under Rule 26(b) (§ 21-1-1(26) (b), N.M.S.A. 1953) such disclosure is required. Our rule is identical with Rule 26(b) of the Federal Rules of Civil Procedure and reads:

"Unless otherwise ordered by the court as provided by Rule 30(b) or (d), the deponent may be examined regarding any matter, not privileged, which is relevant to the subject-matter involved in the pending action, whether it relates to the claim or defense of the examining party or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any

books, documents, or other tangible things and the identity and location of persons having knowledge of relevant facts. It is not ground for objection that the testimony will be inadmissible at the trial if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence."

Although the problem has not been considered by us previously, it has troubled many courts, both state and federal, and there is a considerable volume of decisions wherein the issue has been presented and resolved. The difficulties present in arriving at the proper interpretation of the rule and its application to the particular problem confronting us have resulted in conclusions both granting the right to force disclosure and refusing it, the conclusions both pro and con being supported by a wide variety of reasons. See Annot., 13 A.L.R.3d 822 (1967); Developments in the Law—Discovery, 74 Harv.L.Rev. 940, 1018 (1961); Jenkins, Discovery of Automobile Liability Insurance Limits: Quillets of the Law, 14 Kan.L.Rev. 59 (1965); Comment, 7 Natural Resources J. 313 (1967); 2A Barron & Holtzoff, Federal Practice & Procedure, § 647.1 (Rules Ed.1961); 4 Moore, Federal Practice, ¶ 26.16[3] (2d Ed.1962).

An examination of these authorities will quickly disclose the leading cases on the subject and the multitude of arguments on each side and, further, the total absence of basis for reconciliation between them.

We do not propose to traverse the many paths heretofore traveled, but to confine ourselves to a consideration of the wording of the rule and, if found to be ambiguous, to attempt to determine and apply the intent as disclosed therein.

We have over the years announced a number of rules of statutory construction which we consider pertinent. They are no less applicable because we are interpreting a rule and not a statute.

We first note the rule that statutes are to be given effect as written, Gonzales v. Oil, Chemical & Atomic Workers International Union, AFL–CIO, 77 N.M. 61, 419 P.2d 257 (1966), and where free from ambiguity, there is no room for construction. Martinez v. Research Park, Inc., 75 N.M. 672, 410 P.2d 200 (1966). Where there is ambiguity, however, and meaning is not clear, resort may be had to construction and interpretation, Montoya v. McManus, 68 N.M. 381, 362 P.2d 771 (1961); Weiser v. Albuquerque Oil & Gasoline Co., 64 N.M. 137, 325 P.2d 720 (1958), and, even then, intent is to be determined primarily from the language used, Montoya v. McManus, supra, and the entire provision is to be read together so that all parts are given effect in arriving at the intent of the drafters and promulgators. Drink, Inc. v. Babcock, 77 N.M. 277, 421 P.2d 798 (1967); Cox v. City of Albuquerque, 53 N.M. 334, 207 P.2d 1017 (1949).

What, then, is the meaning of the language stating, that "the deponent may be examined regarding any matter * * * which is *relevant to the subject-matter involved* * * *."? We do not interpret the rule as requiring a strict interpretation of subject matter as being negligence, proximate cause, injuries and damages, as opposed to the entire process of the litigation, including collection of a judgment. Rather, we accept a broad interpretation of this language which has been adopted by those courts applying the so-called liberal approach, and conclude that the subject matter should not be delimited by technical or confining definitions and matter "relevant" thereto would conceivably include information concerning the fund available to pay any judgment, being specifically the public liability insurance. Also, if this were all that the rule stated, we could agree that possibly disclosure should be permitted as in accord with the purpose expressed in Rule 1, Federal Rules of Civil Procedure, "to secure the just, speedy and inexpensive

determination of every action." We attach no significance to the fact these words were omitted when we adopted the rules. See New Mexico Rule of Civil Procedure 1 (§ 21–1–1(1), N.M.S.A. 1953). Section 21–3–1, N.M.S.A. 1953, provides for promulgation by the Supreme Court of rules to regulate pleading, practice and procedure for the purpose, among others, of "promoting the speedy determination of litigation upon its merits." This we interpret as indicating the end to be sought by our rules to be no different from that of the federal rules.

We run into problems, however, when we undertake to read the provision of Rule 26(b), permitting examination regarding anything "relevant to the subject-matter involved," with the last sentence of the rule, added in the federal rules in 1948 and in our own in 1949, which states that discovery is not to be denied because of the fact testimony to be elicited will not be admissible on trial, provided it appears "reasonably calculated to lead to the discovery of admissible evidence." The clear inference to be drawn from this language in our view, is that the material being sought must be admissible as evidence on the trial, or for the purpose of developing admissible evidence. Accordingly, when we read the first and last sentences of the rule together, giving meaning to both as required by the rules of construction, we are led unfalteringly to a conclusion that examination may be had concerning anything relevant to the subject matter of the action which will produce evidence admissible in the trial thereof, or which has for its purpose the development of leads to admissible evidence. We do not consider the language reasonably susceptible of interpretation so as to include evidence admissible in supplementary proceedings in the same case to establish assets available to satisfy a judgment, or in a separate suit to collect a judgment. By its express language it is limited to evidence or information leading to evidence admissible at the trial.

In so concluding, we do not consider that we are being either naive or hyper-technical. These names, and worse, have been applied to courts who have refused to follow the lead of those who find the language of the rule not limited to material which may be relevant and admissible in evidence or reasonably expected to develop admissible evidence. See Jenkins, supra.

In our approach to the problem we have tried to apply recognized rules of construction and, having determined the meaning of the rule, we see no room for expanding its operation in the name of public policy, changed circumstances, equalizing of positions of the parties, or any of the many other arguments advanced, both pro and con. The following language of District Judge Augelli, in Bisserier v. Manning, 207 F.Supp. 476, 479 (D.N.J. 1962), correctly sets forth our view:

"There can be no doubt that the objectives of the proponents of discovery of insurance coverage are laudable, especially in view of the increasing number of lawsuits for personal injury, death, and property damage, arising out of automobile accidents. But however desirable it may be to expedite the settlement of cases and thus relieve calendar congestion, we must recognize that the discovery rules, even if, as we must concede, they should be liberally construed to accomplish their general purpose, do nevertheless have certain limitations and boundaries which we are not at liberty to ignore. * * *"

We recognize the so-called liberal interpretation of the rule as having support from many able and respected writers, courts and judges. We would particularly note in this category, Cook v. Welty, 253 F.Supp. 875 (D.D.C. 1966); Ash v. Farwell, 37 F.R.D. 553 (D.Kan. 1965); Johanek v. Aberle, 27 F.R.D. 272 (D.Mont. 1961); Lucas v. District Court of Pueblo County, 140 Colo. 510, 345 P.2d 1064 (1959); People ex rel. Terry v. Fisher, 12 Ill.2d 231, 145 N.E.2d 588 (1957); Maddox v. Grauman,

265 S.W.2d 939, 41 A.L.R.2d 964 (Ky. 1954); Jeppesen v. Swanson, 243 Minn. 547, 68 N.W.2d 649 (1955), and the authors of notes in the Kansas Law Review and Natural Resources Journal, all concluding discovery of policy limits proper. We would add that pronouncements by authors and courts of the caliber noted are not to be lightly cast aside or refused consideration.

■ On the other hand, as many, if not more, equally able and respected courts and judges have concluded through a variety of rationales that discovery of liability insurance limits may not be required under Rule 26(b). We direct attention to the following as typical: Pruitt v. M/V Patignies, 42 F.R.D. 647 (E.D.Mich. 1967); Cox v. Livingston, 41 F.R.D. 344 (S.D.N.Y. 1967); Hooker v. Raytheon Co., 31 F.R.D. 120, 121 (S.D.Cal. 1962); Langlois v. Allen, 30 F.R.D. 67 (D.Conn. 1962); Hillman v. Penny, 29 F.R.D. 159, 160–161 (E.D.Tenn., S.D. 1962); Roembke v. Wisdom, 22 F.R.D. 197, 199 (S.D.Ill. 1958); Gallimore v. Dye, 21 F.R.D. 283 (E.D.Ill. 1958); McNelley v. Perry, 18 F.R.D. 360 (E.D.Tenn. 1955). We also note the following, being a few of the state courts which have concluded similarly: Di Pietruntonio v. Superior Court of Maricopa County, 84 Ariz. 291, 327 P.2d 746 (1958); Verrastro v. Grecco, 21 Conn. Sup. 165, 149 A.2d 703 (1958); State ex rel. Bush v. Elliott, 363 S.W.2d 631 (Mo. 1963); State ex rel. Hersman v. District Court, 142 Mont. 139, 381 P.2d 799 (1963); Mecke v. Bahr, 177 Neb. 584, 129 N.W.2d 573 (1964); State ex rel. Allen v. Second Judicial Dist. Court, 69 Nev. 196, 245 P.2d 999 (1952); Hardware Mutual Casualty Co. v. Hopkins, 105 N.H. 231, 196 A.2d 66, 13 A.L.R.3d 817 (1963). As already indicated, we are satisfied that the decisions in the last cited cases have correctly interpreted the rule and that the writ heretofore issued should be made permanent so as to prevent the respondent from enforcing the order to disclose the amount of insurance coverage available to satisfy judgments that may be recovered in the actions filed against petitioners.

We do not overlook respondent's assertion that since the ownership of the death car will evidently be an issue in the case, and the availability of information concerning assets which could be reached to satisfy a judgment difficult, if not impossible, to come by before judgment, an exception to the rule should be considered. He would have us adopt the reasoning of Layton v. Cregan & Mallory Co., 263 Mich. 30, 248 N.W. 539 (1933), decided before adoption of the rules. Also see Orgel v. McCurdy, 8 F.R.D. 585 (S.D.N.Y. 1948). We are not impressed that the factual situation here present gives rise to a right to learn the policy limits. Plaintiffs in the case are entitled to a judgment, in the event liability is established, for such amount as will compensate for the loss suffered, regardless of ownership of the vehicle. This is in no way affected by the amount of insurance coverage. Just as we recognize that a jury may be prejudiced by knowledge that insurance is present, and we attempt to insulate them from this knowledge, see Falkner v. Martin, 74 N.M. 159, 391 P.2d 660 (1964), and Garcia v. Sanchez, 68 N.M. 394, 362 P.2d 779 (1961), we doubt if information before judgment concerning policy limits has any place in the scheme of trial preparation or presentation. Plaintiff's counsel, having accepted employment, must proceed with equal diligence whether he can collect a large judgment, in full, in part, or not at all. Knowing that insurance is available, he should not agree to a settlement for less than he reasonably appraises the injuries justify as an award by a fair and unbiased jury of the locale of the action. If the insurance company, in withholding information concerning policy limits, effectively prevents a settlement within those limits, it may very well be laying itself open to claims for excess amounts if a judgment for an amount greater than the undisclosed coverage is recovered. However, this question is not before us now and we

484

decline to express any opinion until the issue is raised in a proper case.

It follows from what has been said that the writ should be made permanent. It is so ordered.

CHAVEZ, C. J., and NOBLE, COMPTON and CARMODY, JJ., concur.