511 P.2d 572

**Fred HALE and Marie Hale, Plaintiffs-Appellees,**

v.

**FURR'S INCORPORATED, Defendant-Appellant.**

**No. 1039.**

Court of Appeals of New Mexico.
April 20, 1973.
Certiorari Denied May 22, 1973.

Charles W. Durrett, John E. Conway, Thomas A. Sandenaw, Jr., Shipley, Durrett, Conway & Sandenaw, Alamogordo, for defendant-appellant.

Albert J. Rivera, Alamogordo, for plaintiffs-appellees.

## OPINION

WOOD, Chief Judge.

Marie Hale slipped and fell on some pinto beans in defendant's grocery store. She, and her husband, sued defendant for damages. The jury verdict was for plaintiffs. Defendant's appeal presents four issues: (1) sufficiency of the evidence; (2) reference to insurance; (3) argument to the jury outside the record; and (4) excessive damages.

*Sufficiency of the evidence.*

Defendant challenged the sufficiency of the evidence by appropriate motions at the close of plaintiffs' case and at the close of all the evidence. In considering whether the trial court properly denied these motions, we review the evidence in the light most favorable to plaintiffs, who were resisting the motions. Garcia v. Barber's Super Markets, Inc., 81 N.M. 92, 463 P.2d 516 (Ct.App.1969).

The challenge to the sufficiency of the evidence is directed to the evidence of defendant's negligence and Marie's contributory negligence.

(a) Defendant's negligence.

■ There is evidence that the manager of defendant's store knew that beans had been spilled on the floor and had instructed an employee to sweep them up; that some sweeping was done but the employee did not get all of the beans; that there was still a handful of beans scattered about; that another employee cleaned up the beans after Marie fell. The instruction from the manager occurred between five and thirty minutes prior to the incident. There is evidence that the floor had been waxed the night before; that the manager knew that a person could slip on beans on the type of floor involved here and had experienced persons slipping on beans. This evidence raises a factual question as to defendant's knowledge of the condition and a factual question as to whether the condition involved an unreasonable risk of harm to invitees.

There is evidence that the incident occurred at a very busy time—around 5:30 p. m. of "double stamp day;" that the beans were in an area where patrons of the store would be walking. There is evidence that employees were instructed to be continually on the lookout for items which had fallen to the floor. According to the manager, it was company policy that " . . . whoever first saw the spill or had . . . what was on the floor brought to their attention, they were . . . to . . . get someone to stand over the particular spot where it was spilled and clean it up right then. . . ." There is an inference that Marie never saw the beans before she slipped. The foregoing evidence raised a factual question as to whether defendant should have expected that an invitee would not discover the danger and a factual question as to whether defendant exercised reasonable care to protect invitees from the spilled beans.

Accordingly, there were factual questions as to defendant's negligence under Restatement Torts 2d § 343 (1965) and Proctor v. Waxler, 84 N.M. 361, 503 P.2d 644 (1972).

(b) Marie's contributory negligence.

■ There is evidence the beans were in plain sight. This, together with the inference that Marie never saw the beans before she slipped, according to defendant, is a showing of Marie's contributory negligence as a matter of law. Defendant asserts that a possessor of land is not liable to an invitee for a condition which is known or obvious. See Restatement Torts 2d § 343A, comment (b) (1965).

Marie was carrying her one year old grandchild at the time of the incident. The husband testified the beans were in plain sight "[i]f you walk watching the floor." When asked if the beans would have been seen had you been watching where you were going, the husband said: "Not with the people that was going in and out and all. . . ." There is evidence that the beans were spilled near a checkout counter. With this evidence, we cannot hold Marie contributorily negligent as a matter of law. Behymer v. Kimbell-Diamond Company, 78 N.M. 570, 434 P.2d 392 (1967); Garcia v. Barber's Super Markets, Inc., supra. Marie, an invitee, was not required to be constantly watching the floor in order to avoid being contributorily negligent; as a customer she could assume that the floor was reasonably safe to walk on. Barakos v. Sponduris, 64 N. M. 125, 325 P.2d 712 (1958).

The trial court did not err in denying the motions.

*Reference to insurance.*

Ray Nichols, adult son of Marie, was an employee of defendant. He testified that he was at work at the store on the day of the incident and was the one who cleaned up the beans after Marie fell. Nichols was cross-examined as to statements made by him when interviewed by Bill Arias.

Arias, a defense witness, testified that he interviewed Nichols four weeks before the trial at the request of defense counsel. According to Arias, at the interview, Nichols stated he had not been at the store when Marie slipped on the beans and knew nothing about it.

On cross-examination, Arias was asked if, in investigating the claim, he was working for an insurance company. He replied: "Yes, sir." Defense counsel then objected on the grounds of immateriality; the objection was sustained.

Plaintiffs' counsel insisted to the judge that his question concerning insurance was proper; "it goes to show his bias." Plaintiffs' counsel stated he wished to make a tender. The jury was excused. Counsel argued the question of bias. The trial court remarked that it would be proper to ask Arias if he investigated the accident for the defendant.

Plaintiffs' counsel made his tender by questioning Arias. Arias stated he investigated the case for the insurance carrier for defendant and named the insurance company.

At the conclusion of the tender, defendant moved for a mistrial. The contention was that defendant had been ". . . prejudiced to the point we can't receive a fair trial." Defendant argued that ". . . Mr. Rivera has thoroughly indoctrinated and attempted to indoctrinate the Jury on this insurance question . . .," and asked the question about an insurance company "to show that there is coverage."

The trial court refused to declare a mistrial; it also denied the tender. Defendant then asserted that plaintiffs' counsel wished to question Arias about a statement he took from Marie and asked that plaintiffs' counsel be instructed not to go beyond the scope of defendant's direct examination of Arias. The trial court declined to do so, on the basis he did not know what questions would be asked on cross-examination. The trial court did caution Mr. Rivera that he took a chance on a mistrial if his cross-examination of Arias went beyond the scope of the direct examination.

Proceedings were resumed before the jury.

Plaintiffs' counsel asked Arias who employed him in the case. Defendant objected, claiming the question was immaterial. The objection was overruled. Arias then testified that he was employed by the insurance carrier for defendant, named the insurance carrier and stated he was their employee in the case.

Plaintiffs' counsel then asked Arias if his investigation commenced immediately "after this happened." This question was objected to; the objection was sustained. There were no further questions of Arias.

In its brief, defendant states that the questioning of Arias about insurance ". . . in light of the Court's prior admonishment and specific denial of the tender . . . indicates an open and concerted effort to inject the question of insurance coverage into the case. . . ." Defendant asserts the overruling of defendant's objection was error since the court had limited plaintiffs' counsel to asking Arias if he investigated the case for the defendant.

Defendant relies on the following from Falkner v. Martin, 74 N.M. 159, 391 P.2d 660 (1964): ". . . A mistrial will generally be declared in a negligence action if the question of insurance is brought into the case in such manner as to be calculated to influence the verdict of the jury. . . ." Fort v. Neal, 79 N.M. 479, 444 P.2d 990 (1968) states: ". . . we recognize that a jury may be prejudiced by knowledge that insurance is present. . . ." See also, Garcia v. Sanchez, 68 N.M. 394, 362 P.2d 779 (1961). Defendant recognizes that these decisions do not, on their facts, apply to the situation in this case.

Plaintiffs, on the other hand, rely on recent decisions applying the rule stated in Annot., 4 A.L.R.2d 761, § 7 at 779 (1949):

"It is usually held that it is permissible for plaintiff's counsel, when acting in

good faith, to show the relationship between a witness and defendant's insurance company where such evidence tends to show the interest or bias of the witness and affects the weight to be accorded his testimony."

It is not claimed that it would be improper cross-examination to show that a witness' employer had a financial interest in the case. The claim is that plaintiffs' counsel proceeded in bad faith in persisting in questions about insurance after the trial court had remarked that it would be proper to ask Arias if he investigated the case on behalf of defendant. Good faith on the part of plaintiffs' counsel, that Arias was in fact employed by defendant's insurance company, is established by the tender. Compare Canter v. Lowrey, 69 N.M. 81, 364 P.2d 140 (1961). The good faith issue then is limited to counsel's persistence in insurance questions after the trial court's comments and rulings on the tender. Disregarding the fact that when proceedings resumed before the jury the trial court overruled the objection to the first question about insurance, the situation is similar to that in Chavez v. Valdez, 64 N.M. 143, 325 P.2d 919 (1958). There, it was held that an opening statement by counsel in violation and in defiance of a ruling by the court required a reversal.

We do not apply Chavez v. Valdez, supra, nor do we decide whether insurance may be brought into the case by cross-examination to show a witness' interest or bias.

The jury knew the defendant was insured. In cross-examining Nichols, defendant's counsel identified Arias as being with Lyle Adjustment Company. Plaintiffs introduced the deposition of Dr. Postlewaite. The doctor testified, without objection, that he wrote a letter concerning Marie and a copy was sent to "Mr. Bill Arias, Southwestern-Lyle Claim Service." Defendant, in direct examination of Arias, elicited his occupation as "claims investigator." If the reference to "adjustment," "claim service" and "claims investigator"

failed to convey "insurance" to the jury [see Olguin v. Thygesen, 47 N.M. 377, 143 P.2d 585 (1943); see definition of "investigator" in Webster's Third New International Dictionary (1966)], the matter was made explicit when Arias answered on cross-examination, at the beginning of the sequence of events outlined above, that he was working for an insurance company. An objection was made and sustained, but the question and answer about insurance was not stricken. We are not concerned here with evidence in the case but with the fact that the jury knew of the existence of insurance.

Since the jury knew about insurance in this case, we consider the persistence of counsel's questions in the light of three other items: (a) the jury was instructed: "Whether a party is insured has no bearing whatever on any issue that you must decide. You must refrain from any inference, speculation or discussion about insurance;" (b) the verdict returned is fully supported by the evidence; (c) defendant's liability is reasonably clear.

The questioning by plaintiffs' counsel about insurance being cumulative, the jury having been instructed that insurance had no bearing on any issue, the verdict being fully supported by the evidence and liability being reasonably clear, any error in counsel's persistent questioning was harmless. See Annot., 4 A.L.R.2d, supra, §§ 20 and 21 at 818; § 26 at 821.

*Argument to jury outside the record.*

Plaintiffs' counsel, during the trial, introduced portions of the deposition of Dr. Breck into evidence. In closing argument he read selected portions of the deposition to the jury. In this reading he included comments by Dr. Breck as to Marie's neck condition. These comments went to Marie's ability to turn or twist her neck and ability to "reach up."

Defendant objected to these comments of Dr. Breck on the basis that they were not in evidence. On appeal it claims that reading these comments ". . . . was prejudi-

cial in that it appealed to the sympathy of the jury by bringing out specific limitations on movements not otherwise alluded to by other testimony. . . ." Defendant claims this asserted prejudice requires a reversal. See State v. Pace, 80 N.M. 364, 456 P.2d 197 (1969); Hunter v. Kenney, 77 N.M. 336, 422 P.2d 623, 36 A.L.R. 3d 1362 (1967).

■ The record shows that after defendant's objection there were arguments from counsel. The trial record does not show that the court ruled on the objection. The praecipe called for "the complete record and all proceedings." The clerk's certificate, to which there was no objection, certifies a "full, true and correct transcript." With this showing, the answer to defendant's contention is that it did not invoke a ruling of the trial court on its objection and, thus, cannot complain of plaintiffs' argument. Jackson v. Southwestern Public Service Company, 66 N.M. 458, 349 P.2d 1029 (1960) states: ". . . that any objections to the argument of counsel should be made in time for the court *to rule on them,* and if necessary, to correct them before the jury retires. . . ." (Our emphasis).

Defendant's motion for a new trial asserts the trial court ". . . advised the jury to disregard these statements (those to which defendant objected). . . ." If this be so, we do not have the benefit of the trial court's ruling. Defendant's brief states: "It is not claimed that counsel for plaintiffs persisted in this line of argument. . . ." As one of its instructions, the trial court gave N.M.U.J.I. 17.7, which told the jury that arguments of counsel were not to be considered as evidence.

Not knowing what admonition was given by the trial court, having the admission that plaintiffs did not persist in argument outside the record, and knowing the instruction given concerning arguments by counsel, we cannot rule, as a matter of law, that defendant was prejudiced. State v. Pace, supra, or that the trial court

abused its discretion, Hunter v. Kenney, supra.

*Excessive damages.*

The jury awarded medical expenses to the husband in the amount of $2,500.00. It awarded $25,000.00 to Marie for the following two items: (a) the nature and extent and duration of the injury and (b) the pain and suffering experienced. Defendant asserts the damages awarded Marie are excessive.

Defendant claims the verdict for Marie was based on a mistake as to the measure of damages. It points out there was no testimony as to lost income or for future expenses for domestic help. It points out that proof as to present and future medical expenses came to a total of approximately $3,900.00, yet the medical award was $2,500.00. We fail to understand how any of these factors show a mistaken measure of damages.

There is evidence that Marie experienced pain in her neck and low back immediately after she fell; evidence of a subluxation of the cervical spine and a narrowing of the interspace at the C5–6 level; evidence of loss of the normal curve of the cervical spine and diagnosis of the neck condition varying from sprain to soft tissue injury. There is evidence of a chronic lumbosacral strain. Orthopedic evaluation was of a 15% permanent disability of the body as a result of the neck injury and of a 5% permanent disability of the body as a result of the low back injury.

■ There is evidence that the neck and back injury might not be considered serious in themselves, but that superimposed on the neck and back condition is a "very marked neurotic condition" characterized as an "extreme anxiety neurosis." There is evidence that Marie is not and had not been a malingerer; that she was totally disabled at the time of trial, some thirty-three months after the fall; and is permanently disabled.

There is evidence of continuing pain since the fall and evidence that she will

have pain in both the cervical and lumbar area that "will come and go" for the rest of her life. Her life expectancy at the time of trial was over 26 years.

There is evidence showing the limitation upon her physical activities since the fall. This evidence was to the effect she could no longer ride horses, build corrals or dance as she had before the accident; could no longer do maintenance work at the trailer court of the plaintiffs as before; and could no longer do housework.

The foregoing is substantial evidence to support an award of $25,000.00 for the nature, extent and duration of the injury and for the pain and suffering experienced. Hughes v. Walker, 78 N.M. 63, 428 P.2d 37 (1967); compare Schrib v. Seidenberg, 80 N.M. 573, 458 P.2d 825 (Ct.App.1969).

■ Defendant asserts the jury disregarded an instruction to the effect that Marie was required to exercise ordinary care to minimize her damages. This argument is based on evidence that Marie needed psychiatric evaluation and had not gone to a psychiatrist, and on evidence that a person with a neurosis who goes over six months without a cure has an "irreversible" condition.

However, there is evidence that the "six month" period was set by psychiatrists; that the recommendation for psychiatric evaluation did not occur until more than five months after the accident; that the recommendation was "maybe a little bit late." With this conflict, we cannot say, as a matter of law, that the jury disregarded the instruction on minimizing damages. See Sierra Blanca Sales Co., Inc. v. Newco Industries, Inc., 84 N.M. 524, 505 P.2d 867 (Ct.App.1972).

Defendant contends the verdict for Marie was based on sympathy, passion and prejudice. It relies on the questioning as to insurance and the argument of counsel that went beyond the evidence. Both items have been previously discussed. It also relies on evidence that Marie had little ability to read or write and on evidence inferring that Nichols, her son, lost his job with defendant because of this lawsuit. The answer is that substantial evidence supports the amount of damages awarded and there is nothing in the record indicating any of the above items influenced the damage award. See Sweitzer v. Sanchez, 80 N.M. 408, 456 P.2d 882 (Ct.App.1969); Maisel v. Wholesome Dairy, Inc., 79 N.M. 310, 442 P.2d 800 (Ct.App.1968).

The judgment is affirmed.

It is so ordered.

HENDLEY, J., concurs.

SUTIN, Judge (specially concurring).

The doctrine of cross-examination of a "claims investigator" should be put to rest. After Arias, the claims investigator, had contradicted testimony of plaintiff's witness on direct examination, he was asked this question, to which he made this answer:

Q. Mr. Arias, in investigating this claim you were working for an insurance company?

A. Yes, sir.

Is this question proper? Of course, it is.

This is a matter of first impression in New Mexico. Thirty years ago, the Supreme Court opened the door to reality about a juror's knowledge of insurance coverage for large corporations, but it was "not prepared to accept the invitation to carry the fiction further than it has been carried up to this time." Olguin v. Thygesen, 47 N.M. 377, 384, 143 P.2d 585, 589 (1943).

A generation has passed. The invitation lays in quiet repose.

In Miss. Ice & Utilities Co. v. Pearce, 161 Miss. 252, 134 So. 164 at 167 (1931), the court said:

If counsel, in good faith, on cross-examination, seeks to elicit the interest, bias, or prejudice of a witness by a proper question, he will not be precluded from doing so simply because the answer may reveal that a liability insurance company is interested. No witness, of-

fered by either side, be he prince, potentate, physician, judge, or private citizen, is exempt from the right of fair cross-examination in this state.

Generally, an insurance company employs a claims agency to investigate a claim against an insured. This agency stands in the same shoes as that of the employees of the insurance company which investigates its own claims. It has long been recognized that cross-examination of an adverse witness may leave the bounds of direct examination when it tends to discredit or impeach the witness or to show his bias or prejudice, or the like. State v. Wilcoxson, 51 N.M. 501, 188 P.2d 611 (1948). This cross-examination includes his employment, even though it discloses the name of the insurance company. Pickett v. Kolb, 250 Ind. 449, 237 N.E.2d 105 (1968); Yates v. Grider, 145 Ind.App. 567, 251 N.E.2d 846 (1969); Annot. 4 A.L.R.2d 761 at 779.

An insurance company is, subrosa, the defendant in the case. It has extraordinary experience in trials. It usually employs able attorneys. Its attorneys should know that an insurance company servant or agent used as a witness to harm a plaintiff's case is subject to cross-examination on the matter of the witness' employment.

One method of avoiding the "conspiracy of silence" requires the insurance company to place each claim in the office of an attorney. The attorney's duties are owed primarily to the insured. Knepper, Conflicts of Interest in Defending Insurance Cases, 19 Defense L.J. 515 (1970). If the attorney selects an investigator to discover the facts, the investigator is not an employee of an insurance company. If this fact is made known to plaintiff in the event of litigation, cross-examination on the subject of the witness' employment should be limited to that of the attorney for whom he was employed.

Often, adjusters and claims examiners of insurance companies take action and make decisions over which the lawyer has no control.

In my opinion, the defendant's attorney was justified in using Arias as a witness. This leads to new avenues of thought on the subject of error during cross-examination. "The conspiracy of silence is hard to maintain." McCormick on Evidence, 358 (1954).

The many controversies which exist on the subject of insurance disclosure need not be restated. McCormick on Evidence, 355, McDonald, Insurance Against Liability: An Anomaly in Negligence Cases, 65 Dickinson L.R. 19 (1960); Lauver, the Insurance Syndrome and the Pennsylvania Courts, 70 Dickinson L.R. 64 (1965); Kalven, The Jury, The Law, and the Personal Injury Damage Award, 19 Ohio St.L.J. 158 at 170 (1958); Hagedorn, Exclusion of Evidence of Insurance in Oregon, 8 Willamette, L.J. 294 (1972); McKay, Evidence-Introduction of Insurance at a Trial, 73 W.Va.L.R. 282 (1971); Brockmann, Evidence-Identification of Defendant's Insurance Company, 16 Ark.L.R. 299 (1962).

Constant appeals and new trials by mention of the word "insurance" should end. The knowledge of jurors on the subject is unquestionable. Runnacles v. Doddrell, 59 N.J.Super. 363, 157 A.2d 836 (1960).

The complete abolition of the exclusionary rule is the best solution. It has been done in the States of Louisiana and Wisconsin where the insurance company is the party defendant. It is true where compulsory insurance is statutory. 4 A.L.R.2d 761 at 786, § 13 (1949).

Times have changed. Seasons in the law have changed in succeeding generations. Decisions in some states move slowly in the direction of abolition of the exclusionary rule. We, in New Mexico, move more slowly to attain that objective.

Secrecy of "insurance" is an old fashioned antique. The "hush-hush" policy should be discarded. The dignified term "insurance" should be placed on the drawing board of the courtroom. When plaintiff and defendant play this game fairly and openly before a jury in the last quarter of the twentieth century, both plaintiff

and defendant will receive a fair trial. The many new trials, the expensive appeals, the struggle over the use of fastidious words of explanation, the contradictions in judicial opinions, all would fade away. I express no opinion on the concepts of "no-fault" insurance. If adopted in New Mexico, it will simply dignify the word "insurance" instead of making it a "prejudicial" word in the courtroom. A review of the hundreds of cases listed in 4 A.L.R.2d 761, and supplements, disclose a circus of decisions made up of clowns and tumblers.