517 P.2d 75

STATE of New Mexico, Plaintiff-Appellant,

v.

Donald McHORSE, a/k/a Duke McHorse, Defendant-Appellee.

No. 1252.

Court of Appeals of New Mexico.

Nov. 14, 1973.

David L. Norvell, Atty. Gen., F. Scott MacGillivray, Asst. Atty. Gen., Santa Fe, for plaintiff-appellant.

Margaret W. Lamb, Taos, for defendant-appellee.

OPINION

WOOD, Chief Judge.

The indictment charges defendant, in three counts, of distributing a controlled substance to a person under eighteen years of age, contrary to § 54–11–21, N.M.S.A. 1953 (Repl.Vol. 8, pt. 2, Supp.1973). Two of the counts involve marijuana. See § 54–11–21(A), supra. One count involves peyote. See § 54–11–21(B), supra, and § 54–11–6(C), N.M.S.A.1953 (Repl.Vol. 8, pt. 2, Supp.1973). In response to a defense motion, the district attorney filed a statement of facts. Section 41–23–9, N.M.S.A. 1953 (2d Repl.Vol. 6, Supp.1973). As to each count, the district attorney stated the controlled substance was placed in an envelope which was mailed to a juvenile in Alamogordo, New Mexico and that the offense was committed in Taos, New Mexico. The trial court dismissed the indictment on three grounds: (1) neither the defendant nor a juvenile is a "person" within the meaning of the controlled substances act; (2) sending a controlled substance through the mail is not a "distribution;" and (3) if there was a distribution by use of the mail, State authority to regulate has been "federally preempted." We review each ground and reverse.

*"Person" under the controlled substances act.*

Section 54–11–21, supra, uses the word "person" in relation to the one distributing the controlled substance and the one to whom the substance is distributed. Section 54–11–2, N.M.S.A.1953 (Repl.Vol. 8, pt. 2, Supp.1973) defines various terms used in the controlled substances act. Subparagraph (R) reads:

"'person' includes a partnership, corporation, association, institution, political subdivision, government agency or other legal entity;"

As defendant points out, this definition does not contain "the words 'one or more individuals' or 'human being.'"

Defendant compares the New Mexico controlled substances act with similar acts of other jurisdictions. In the other jurisdictions cited, the statutory definition of "person" expressly refers to "individuals." Defendant also cites other New Mexico statutes which use "individual" in defining "person." On the basis of these comparisons, defendant asserts the New Mexico Legislature failed to place "individual" or "human being" within its definition of "person." This comparison is not dispositive because our concern is with the words used in the legislation under consideration. Legislation is to be read and given effect as written. Gonzales v. Oil, Chemical and Atomic Workers Int. U., 77 N.M. 61, 419 P.2d 257 (1966).

Defendant also claims that the definition of "person" is clear and unambiguous and, thus, not subject to interpretation by this Court. On this basis, defendant asserts there is "no need to determine legislative intent." Defendant's statement is incomplete in that it omits the requirement that the meaning of a statute is to be ascertained primarily from the words used in the statute.

We look first to the words used. If those words are plain and unambiguous, there is no room for construction. Southern Union Gas Co. v. New Mexico Pub. Serv. Com'n, 82 N.M. 405, 482 P.2d 913 (1971); Fort v. Neal, 79 N.M. 479, 444 P. 2d 990 (1968). Where there is ambiguity interpretation is required, but that interpretation is for the purpose of determining legislative intent. State v. Clark, 80 N.M. 340, 455 P.2d 844 (1969). Legislative intent is to be determined primarily from the language used in the statute. Fort v. Neal, supra.

■ In this case, we agree there is no ambiguity. Accordingly, we look no further than the meaning of the words used in the statute. Those words are " 'person' includes."

■ "Person" is a generic term of comprehensive nature, embracing natural and artificial persons. State ex rel. v. Huller, 23 N.M. 306, 168 P. 528, 1 A.L.R. 170 (1917), appeal dismissed, 247 U.S. 503, 38 S.Ct. 426, 62 L.Ed. 1239 (1918). "Person" is inclusive rather than exclusive; its meaning includes individuals. Gonzales v. Oil, Chemical and Atomic Workers Int. U., supra. The word "includes" in § 54–11–2(R), supra, added to the definition of "person" by extending the meaning to the entities listed. This addition is just that, an extension, rather than an entire definition of "person." State v. Romero, 74 N.M. 642, 397 P.2d 26 (1964).

Since the word "person" includes individual natural persons, both the defendant and the juvenile are "persons" within the meaning of § 54–11–21, supra.

*Is there a "distribution" when a controlled substance is sent through the mail?*

Section 54–11–21, supra, applies to distribution of a controlled substance. Section 54–11–2(J), supra, states: " 'distribute' means to deliver other than by administering or dispensing. * * * " Section 54–11–2(G), supra, states: " 'deliver' means the actual, constructive or attempted transfer from one person to another * * * whether or not there is an agency relationship. * * * "

The issue argued under this point is the meaning of "constructive transfer." Defendant asserts "transfer" means a direct person-to-person handover. With this asserted meaning, he contends that "deliver" defined as a "constructive transfer" is void for vagueness because "what on earth is a 'constructive transfer.' "

"Transfer" means making over the possession or control. Black's Law Dictionary (4th ed. 1951); Webster's Third New International Dictionary (1966).

"Constructive" is defined in Black's Law Dictionary, supra, as " * * * that which has not the character assigned to it in its own essential nature, but acquires such character in consequence of the way in which it is regarded by a rule or policy of law. * * * " Webster's Third New International Dictionary, supra, defines "constructive" as " * * * often used in law of an act or condition assumed from other acts or conditions which are considered by inference or by public policy as amounting to or involving the act or condition assumed. * * * " Black's Law Dictionary, supra, under "delivery" states that a "constructive delivery" occurs when the conduct of the parties is such as to be inconsistent with any other supposition than that there has been a change in the nature of the holding. See Galemore v. Mid-West National Fire & Cas. Ins. Co., 443 S.W.2d 194 (Mo.App.1969).

"The delivery (of a check) to the post office (for final delivery to the addressee) is a constructive and technical delivery." Commonwealth v. Ballante, 2 Pa.Dist. & Co. 538, 71 Pittsb.Leg.J. 112 (1922). The deposit of an insurance policy in the mail, addressed to the insured, is a constructive delivery to the insured. See Frye v. Prudential Ins. Co. of America, 157 Wash. 88, 288 P. 262 (1930). See also New York Life Ins. Co. v. Mason, 151 Ark. 135, 235 S.W. 422, 19 A.L.R. 618 (1921). Compare the effect of mailing or shipping in unilateral contracts. Williston on Contracts § 81 (3d ed. Jaeger 1957).

■ The statement of facts is to the effect that defendant mailed the controlled substance to the juvenile. If this is true, defendant selected the mails as his delivery agent. Associated Petroleum Transport v. Shepard, 53 N.M. 52, 201 P.2d 772 (1949). If properly mailed, there was a presumption of delivery. Adams v. Tatsch, 68 N.M. 446, 362 P.2d 984 (1961). Placing the controlled substance in the mail had the effect of turning the controlled substance over to an agent for delivery. This amounts to a constructive transfer which,

under §§ 54–11–2(G) and (J), supra, is a distribution. Compare United States v. Alvarez, 462 F.2d 176 (9th Cir. 1972).

■ A person of common intelligence does not have to guess at the meaning of statutes which prohibit "distribution" of a controlled substance, define "distribution" in terms of "deliver" and define "deliver" in terms of a constructive transfer of the controlled substance. "Constructive transfer" is not void under the due process clause on the grounds of vagueness. State v. Orzen, 83 N.M. 458, 493 P.2d 768 (Ct. App.1972).

*Federal preemption.*

■ By "federal preemption" we mean a situation where federal law so occupies the field that state courts are prevented from asserting jurisdiction. Gonzales v. Oil, Chemical and Atomic Workers Int. U., supra; compare Sangre de Cristo Dev. Corp., Inc. v. City of Santa Fe, 84 N.M. 343, 503 P.2d 323 (1972), cert. denied, 411 U.S. 938, 93 S.Ct. 1900, 36 L.Ed.2d 400 (1973).

■ The federal controlled substances act does not raise a preemption question. 21 U.S.C.A. § 903 (1972) states: "No provision of this subchapter shall be construed as indicating an intent on the part of the Congress to occupy the field in which that provision operates, including criminal penalties, to the exclusion of any State law on the same subject matter * * * unless there is a positive conflict between that provision of this subchapter and that State law so that the two cannot consistently stand together." The subchapter referred to in the quotation includes 21 U.S.C.A. § 845 (1972), which is a provision similar to § 54–11–21, supra. There is no positive conflict between 21 U.S.C.A. § 845, supra, and § 54–11–21, supra, and none is claimed.

Defendant's contention is that federal postal laws are exclusive. This preemption claim is based on the stated fact that the controlled substances were mailed. The claim is based on two items: (1) U.S.

Const. Art. I, § 8, clause 7 and (2) 18 U.S.C.A. § 1716 (1970).

The constitutional provision gives the Congress power to establish post offices. In Crossley v. California, 168 U.S. 640, 18 S.Ct. 242, 42 L.Ed. 610 (1898) it was asserted that California had no jurisdiction over a murder charge because the murder of a railway engineer was committed by derailing a train engaged exclusively in transporting the mail. The contention was rejected on the basis that an act may constitute an offense against both the United States and an individual state and the guilty party may be punished under the laws of each government. The derailment could be punished under federal law; the murder under state law.

Rose v. State, 4 Ga.App. 588, 62 S.E. 117 (1908) involved the use of the mails to sell liquor during prohibition. The opinion states: " * * * the state may punish for a crime committed through the mails as a medium, without in any sense impinging the undoubted right of the national government to control the mails. * * *"

■ In this case the operation of the mails is not affected by New Mexico's controlled substances act. See Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957); Railway Mail Association v. Corsi, 326 U.S. 88, 65 S.Ct. 1483, 89 L.Ed. 2072 (1945); Martin v. Pittsburgh & L.E.R. Co., 203 U.S. 284, 27 S.Ct. 100, 51 L.Ed. 184 (1906); Ministers Life and Casualty Union v. Haase, 30 Wis.2d 339, 141 N.W.2d 287 (1966); appeal dismissed, 385 U.S. 205, 87 S.Ct. 407, 17 L.Ed.2d 301 (1966). Compare Fox v. The State of Ohio, 46 U.S. 410, 12 L.Ed. 213 (1847). The federal constitutional provision did not preempt New Mexico jurisdiction.

■ 18 U.S.C.A. § 1716, supra, establishes a criminal offense for depositing for mailing, or delivery by mail, anything declared to be nonmailable in that section. See also 39 U.S.C.A. § 3001 (1962). The section contains provisions regulating the

mailing of poisonous drugs. Assuming marijuana and peyote classify as poisonous drugs (a point unnecessary to decide), 18 U.S.C.A. § 1716, supra, does not purport to make a federal offense of the distribution of controlled substances. The statute is limited to the mailing of nonmailable items. The mail offense is different from the distribution offense. The fact that defendant may have violated the federal statute does not prevent New Mexico from prosecuting a violation of the state statute. State v. Seaman, 137 N.J.L. 405, 60 A.2d 275 (1948). 18 U.S.C.A. § 1716, supra, does not preempt New Mexico jurisdiction. People v. Gaither, 173 Cal.App.2d 662, 343 P.2d 799 (1959), cert. denied, 362 U.S. 991, 80 S.Ct. 1082, 4 L.Ed.2d 1023 (1960).

Each of the grounds on which the indictment was dismissed is erroneous. The order of dismissal is reversed. The cause is remanded with instructions to set aside the order of dismissal and reinstate the indictment on the docket of the court.

It is so ordered.

SUTIN and LOPEZ, JJ., concur.