STATE, Plaintiff v. SPRATLIN, Defendant

(243 N.W.2d 386)

(File No. 11660. Opinion filed June 24, 1976)

**John H. Shepard**, of **Morman, Smit & Shepard**, Sturgis, for defendant and appellant.

No appearance for the State.

WOLLMAN, Justice.

Defendant was found guilty by a jury of distributing or dispensing a controlled substance (amphetamines) in violation of SDCL 39-17-88. Defendant's principal contentions on appeal are that the trial court erred in giving an instruction on an agency relationship between the person to whom the amphetamines had allegedly been distributed and a third party, and that the evidence was not sufficient to warrant a conviction on the theory of agency. In lieu of filing a brief, the state filed a motion asking that we reverse the conviction and remand the case for a new trial because the criminal agency instruction was improperly given. Defendant resisted the motion, asking that we consider the appeal on its merits, which we have done. In accordance with our obligation to do so, we have examined the record to determine

whether the alleged error conceded by the state in fact justifies reversal. State v. Pierce, 88 S.D. 359, 220 N.W.2d 254, and cases cited therein. We have concluded that there was no prejudicial error and that the conviction should be affirmed.

The information charged that the defendant

" * * * did wilfully, unlawfully and feloniously distribute or dispense a substance controlled under Chapter 39-17 SDCL 1967, as amended, to-wit: did so distribute or dispense amphetamines to William Conner, within Butte County, South Dakota, in violation of SDCL 1967 39-17-88. * * * "

The state's evidence revealed that on August 1, 1974, one Larry Harris called defendant at defendant's Rapid City, South Dakota, telephone number and arranged to meet defendant at Harris' home in Belle Fourche later that day for the purpose of receiving some drugs from defendant. At about 4:00 o'clock that afternoon, defendant, accompanied by a female companion, arrived at Harris' home. Defendant and Harris discussed the price of the amphetamines that defendant had brought with him, which was to be $125 per 1000-tablet bag. Defendant, Harris and the girl then left Harris' home in defendant's automobile and drove to a point on a gravel road about five miles out of town for the purpose of hiding the amphetamines. Defendant got out of the car, opened the hood and removed a package which he gave to Harris. Harris took the package and hid it in some bushes approximately 15 or 20 feet from the traveled portion of the highway and then piled three rocks near the side of the road as a marker. The three then drove back to Belle Fourche, where defendant and his companion left Harris off at the latter's home. No money was exchanged between Harris and defendant.[1] Harris then met Bill Conner by prearrangement at a drive-in restaurant and gave Conner a map showing the area where the drugs were hidden. Conner had met with Harris earlier in the day. In Conner's words,

---

1. In late June of 1974, Harris had purchased some amphetamines from defendant near Sturgis, South Dakota. No money was exchanged at the time defendant transferred those drugs to Harris, and defendant later picked the money up at Harris' house. Harris testified that prior to August 1, 1974, he had ordered drugs by calling the number that he had called on August 1, 1974.

" * * * I was trying to get some [drugs] for Rich. He wanted some." In response to a question concerning how the arrangements were made, Conner testified that,

"Larry (Harris) made 'em. I was getting 'em from Larry, and he was getting 'em from Rapid City."

After receiving the map from Harris, Conner located Richard Carlson and went with Carlson to the place where Harris had hidden the drugs. Conner pretended that he did not see the bag containing the amphetamines because, in his words, " * * I didn't want to touch the drugs." Carlson opened the plastic bag and removed the enclosed packets of white pills. After counting the twenty packets, Carlson replaced them in the larger bag and took them back to Belle Fourche, where, by a prearranged signal from Carlson, who was an undercover narcotics agent, law enforcement officers entered Carlson's apartment and arrested Conner.

Conner testified that he had never seen defendant prior to the preliminary hearing that was held in connection with the instant case. On cross-examination he acknowledged that he did not know defendant, that he had not purchased anything from defendant on August 1, 1974, or at any time prior to or subsequent to that date, and that Harris had bought drugs for him "a couple of times."

At the conclusion of the state's case, defendant moved for a directed verdict of acquittal on the ground that the state's evidence had failed to establish that defendant had distributed a controlled substance to Conner. In response to this motion, the state's attorney argued that the theory of the state's case was that Harris was working for defendant, that Conner was working for Harris and that the amphetamines were procured by Conner through Harris from defendant. Defendant renewed this motion at the close of all of the evidence.

The court on its own motion, and apparently without any assistance from the state in the way of legal research or the citation of any authority, gave the following instruction:

"Instruction 3A

"In order to sustain its burden of proof under the charge contained in the information it is necessary for the State to prove beyond a reasonable doubt that Larry Harris was in fact the agent of William Conner at the time and place charged in the information.

"In an agency relationship, the party for whom another acts and for whom he derives authority to act is known and referred to as a 'principal', while the one who acts for and represents the principal, and acquires his authority from him, is known and referred to as an 'agent'. The agent is a substitute or deputy appointed by the principal with power to do certain things which the principal may or can do. Pursuant to the grant of authority vested in him by the principal, the agent is the representative of the principal and acts for, in place of, and instead of, the principal."

Defendant objected to the giving of this instruction on the ground that it would be tantamount to allowing the state to amend its pleadings after jeopardy had attached and that it would allow the state to do indirectly that which it could not do directly, that is, prove that defendant had sold drugs to Conner. Defendant also objected to the instruction on the ground that it did not accurately state the law of criminal agency and on the ground that there was no showing in the record that Harris was in fact Conner's agent at the time the events described above took place.

SDCL 23-32-5 provides:

"The indictment or information must be direct and certain as it regards:

(1) The party charged;

(2) The offense charged;

(3) The name of the thing or person upon or against

whom the offense was committed."

SDCL 23-32-12 provides in part that:

"The indictment or information is sufficient if it can be understood therefrom:

\*　　　\*　　　\*　　　\*　　　\*　　　\*

(6) That the offense charged is designated in such a manner as to enable a person of common understanding to know what is intended."

In State v. Blue Fox Bar, Inc., 80 S.D. 565, 128 N.W.2d 561, we held that these statutes require the state to set forth in the information the name of the person to whom a defendant is charged with having unlawfully sold intoxicating liquor. Defendant argues that the logical extension of the Blue Fox Bar case is that not only must the victim or person against whom an alleged act was committed be named, but that the proper person be named.

■ We conclude that defendant's attack upon the sufficiency of the information must fail for two reasons. First, as a defense to the charge against him, defendant attempted to establish an alibi — that he was in Aberdeen, South Dakota, on the day of the alleged offense and perforce could not have distributed the controlled substance to Conner. That defense, if established, would have been as effective against a charge that defendant had distributed the controlled substance to Larry Harris or Richard Carlson as it would have been to the charge in question. In other words, we fail to see how defendant can complain that he was prejudiced in any way in preparing his defense inasmuch as the defense he tendered would have been good as against an allegation that he had distributed a controlled substance on August 1, 1974, to any of the individuals involved in the alleged scheme of distribution.

■ Defendant's attack on the sufficiency of the information and the proof adduced thereunder also fails for the reason that the statute in question does not require that the distribution of

the controlled substance must be made directly from the distributor to the distributee. SDCL 39-17-88 provides that:

> "Except as authorized by this chapter, it shall be unlawful for any person to manufacture, distribute, or dispense a substance controlled under this chapter, or to possess with intent to manufacture, distribute, or dispense, a substance controlled under this chapter."

SDCL 39-17-44 provides in part that:

> "The following words and phrases, for the purposes of this chapter, shall have the following meanings, unless the context otherwise requires:
>
>         \*       \*       \*       \*       \*       \*
>
> (6) 'Deliver' or 'delivery' means the actual, constructive, or attempted transfer of a controlled drug or substance whether or not there exists an agency relationship.[2]
>
> (7) 'Dispense' means to deliver a controlled drug or substance to the ultimate user or human research subject, including the packaging, labeling, or compounding necessary to prepare the substance for such delivery, and a 'dispenser' is one who dispenses.
>
> (8) 'Distribute' means to deliver a controlled drug or substance. 'Distributor' means a person who delivers a controlled drug or substance."

In construing a statute substantially similar to SDCL 39-17-44(6), the Nebraska Supreme Court recently held that,

> "To sustain a conviction under section 28-4,125(1)(a),

---

2. The phrase "whether or not there exists an agency relationship" eliminates the "procuring agent" defense that was available under prior narcotic drug laws. See, e.g., United States v. Pruitt, 8 Cir., 487 F.2d 1241, and cases cited therein; People v. Williams, 54 Mich.App. 448, 221 N.W.2d 204.

R.S.Supp., 1974, it is not necessary for the State to show actual physical transfer of a controlled substance from the defendant. The statutory definition of delivery clearly encompasses more than actual, direct physical transfers. It includes constructive and indirect transfer as well. The evidence in this case was sufficient to show that the defendant constructively delivered a controlled substance to Officer Cramer." State v. Guyott, Neb., 239 N.W.2d 781, 782.

Although in the Guyott case there had been a conversation between defendant and the officer prior to the time that the officer picked up the drugs from the place where defendant had told him they would be, we conclude that the rationale of the case is applicable to the facts of the instant case.

In interpreting a statute substantially similar to SDCL 39-17-44(6), the Court of Appeals of New Mexico stated that:

"The statement of facts is to the effect that defendant mailed the controlled substance to the juvenile. If this is true, defendant selected the mails as his delivery agent. (citation omitted) If properly mailed, there was a presumption of delivery. (citation omitted) Placing the controlled substance in the mail had the effect of turning the controlled substance over to an agent for delivery. This amounts to a constructive transfer which, under §§ 54-11-2(G) and (J), supra, is a distribution. * * * " State v. McHorse, N.M.App., 85 N.M. 753, 756, 517 P.2d 75, 78.

SDCL 39-17-88 does not include the word "sale," nor is there any requirement in the statute that makes the exchange of money or other valuable consideration an element of the offense of unlawful distribution of a controlled substance. The fact that there was no exchange of money between defendant and Harris or between defendant and Conner is without significance. In other words, the scope of the South Dakota Drugs and Substances Control Act, SDCL 39-17, is broader in

application than those statutes which require the exchange of consideration for the transfer of a drug as a prerequisite to a criminal charge. As was pointed out with respect to the Federal Comprehensive Drug Abuse Prevention and Control Act of 1970, which in pertinent part is substantially similar to the provisions of SDCL 39-17 quoted above,

"These prior concepts have been discarded in the Controlled Substances Act which contains no sale or buying requirement to support a conviction; there is now an offense of participation in the transaction viewed as a whole. The Comprehensive Drug Abuse Prevention and Control Act of 1970 is extremely broad in scope, no longer restricted to the narrower concepts of buy and sell, but all inclusive in covering the entire field of narcotics and dangerous drugs in all phases of their manufacturing, processing, distribution and use. All distribution is controlled or prohibited, legitimate or illegitimate. Any individual who participates in any manner in the unauthorized distribution of such 'controlled substances' is amenable to the Act and the sanctions provided therein. Congress undoubtedly intended by this new Act to make an all-out attempt to combat illicit drugs by subjecting any individual who knowingly participates in the distribution to substantial, and in some cases severe, penalties while dealing less severely with, and attempting to aid, the unfortunate individuals who are the ultimate users of the illicit drugs. * * * " United States v. Pruitt, 8 Cir., 487 F.2d 1241, 1245.

We think that the same considerations apply to the interpretation of SDCL 39-17. Cf. State v. One 1972 Pontiac Grand Prix, 90 S.D. 455, 242 N.W.2d 660. One who undertakes to distribute a controlled substance unlawfully in this state does so at his peril and is not immune from prosecution merely because the person to whom the controlled substance is deemed delivered was not in privity with the distributor. The evidence in the instant case admits but of one conclusion — that defendant must have intended to distribute the amphetamines to someone other than Harris,

else why would he and Harris have driven to a secluded point to conceal the drugs, and why would defendant not have insisted upon payment from Harris at the time he transferred the amphetamines to him? True, it does not appear on the face of the record why the state could not have charged defendant with having distributed the amphetamines to Harris, but that fact is immaterial in determining whether the charge as actually brought against defendant is sufficient to support the conviction.

In attacking Instruction 3A, defendant cites cases dealing with the criminal liability of a principal for the acts of his agent. See e.g., Ex Parte Marley, 29 Cal.2d 525, 175 P.2d 832; People v. Doble, 203 Cal. 510, 265 P. 184. Instruction 3A, however, was posited on the premise that Harris was Conner's agent in the transaction. Although the instruction might be improved upon and expanded, we conclude that it was sufficient to apprise the jury that in order to convict defendant they would have to find beyond a reasonable doubt that Harris was in fact Conner's agent at the time defendant transferred possession of the controlled substance. There was sufficient evidence from which the jury could reasonably have made such a finding.

We have considered defendant's contentions that the amphetamines should not have been admitted in evidence because the chain of evidence was defective, that the exhibits were not properly identified by investigating officers, and that the manner in which the exhibits were displayed to the jury during the course of the trial was improper and prejudicial, and we have concluded that these contentions are without merit.

The conviction is affirmed.

WINANS, J., concurs.

COLER, J., concurs specially.

DUNN, C. J., dissents.

COLER, Justice (concurring specially).

I agree with the result reached by the majority opinion but considering the nature of the charge and the record in this case, I do not believe the emphasis placed by the appellant on the agency instruction, Instruction 3A, and this court is warranted.

Appellant was charged in the complaint as a principal in the distribution or dispensing of amphetamines to another. His presence at the time of the actual transfer of drugs from the hiding place selected by him to the go-between, Harris, through Conner to Carlson, whether he was an agent of Conner, or the appellant, or an independent contractor matters not, I believe, by reason of the plain import of SDCL 22-3-3 which reads as follows:

> "22-3-3. All persons concerned in the commission of crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense or aid and abet in its commission, *though not present*, are principals." (Emphasis Supplied)

While an instruction might have been given which set forth the essence of the above quoted statute, I am not aware of any requirement for such an instruction absent a request therefor.

The agency instruction, in my opinion, was unnecessary but not misleading. If prejudicial at all, the instruction was prejudicial to the state in that it placed a burden of proof on the state which the state would not have, under SDCL 22-3-3, but nevertheless it met that burden.

DUNN, Chief Justice (dissenting).

I believe that there are two grounds upon which defendant's conviction should be reversed. First, the court's Instruction 3A improperly sets forth the agency relationship which the state was attempting to prove. Instruction 3A states in part:

> "In order to sustain its burden of proof under the charge contained in the information it is necessary for the State to prove beyond a reasonable doubt that *Larry Harris was in fact the agent of William Conner at*

*the time and place charged in the information.*" (Emphasis supplied)

However, the state's attorney stated that his case proved that Harris was an agent of the defendant, not William Conner. At page 127 of the trial transcript he stated (out of the presence of the jury):

"Quite obviously, from the testimony that's been submitted to the Court and jury; the state's case in chief is *that Larry Harris was working for Mr. Spratlin, that Mr. Bill Conner was working for Mr. Larry Harris, and that Richard Carlson was working for the State of South Dakota as an undercover agent.* That it is part of the chain of evidence that the drugs that were ultimately introduced into evidence in this case were procured by Mr. Bill Conner through Mr. Harris, from Mr. Spratlin." (emphasis supplied)

The court's instruction said that it had to be proved that Harris was Conner's agent while the state's attorney said that the evidence showed that Harris was defendant Spratlin's agent. I do not see how the jury could help but be confused by Instruction 3A. That erroneous instruction in itself would merit a reversal and a new trial.

The more serious question is the sufficiency of the information. As the proposed opinion notes, the offense charged was that defendant distributed or dispensed controlled substances to William Conner. Nothing is said in the information about Larry Harris or Richard Carlson. In State v. Blue Fox Bar, Inc., 1964, 80 S.D. 565, 128 N.W.2d 561, this court stated:

"Article VI, Section 7 of our Constitution prescribes that 'In all criminal prosecutions the accused shall have the right * * * to demand the nature and cause of the accusation against him * * '. According to SDC 1960 Supp. 34.3010(6) (now SDCL 23-32-12(6)) the offense charged in the information must be 'designated in such a manner as to enable a person of common under-

standing to know what is intended' and SDC 1960 Supp. 34.3008 (now SDCL 23-32-5) specifically requires that an indictment or information be direct and certain as it regards:

(1) The party charged;

(2) The offense charged;

(3) The name of the thing or person upon or against whom the offense was committed.

The test of the sufficiency of an information under these provisions is whether it apprises a defendant with reasonable certainty of the nature of the accusation against him so that he may prepare his defense and plead the judgment as a bar to any subsequent prosecution for the same offense." 80 S.D. at 567, 128 N.W.2d at 562-563.

I think that the information here fails to meet either part of the test. Mr. Conner testified that he had never met nor had he had any dealings with the defendant. The record reveals nothing which would indicate that defendant knew Mr. Conner or knew that Harris was going to turn the drugs over to him. Therefore, I do not think that Mr. Conner's name in the information was sufficient to enable the defendant, a man of common understanding, to know with reasonable certainty the accusation against him. Also, I do not feel that the information was sufficient to enable defendant to plead the judgment as a bar to a subsequent prosecution. Since the information did not mention Mr. Harris, defendant could not plead the judgment as a bar to a prosecution for dispensing a controlled substance to Mr. Harris on August 1, 1974. This is true even though the evidence shows that the dispensing to Mr. Harris was only part of the overall transaction.

While I think that the theory of criminal agency is sound, especially in cases involving chain sales of drugs, the agency theory should have been set out in the information. The mention of Mr. Harris as the agent of defendant would have apprised

defendant specifically of the accusation and met the test set out above.

I am also disturbed by the language of the first full paragraph on page 5 of the opinion. To me, it is saying that defendant cannot now attack the sufficiency of the information because he went ahead and put in an alibi defense. Does that mean that a criminal defendant should be put to the choice of attacking the information on appeal or putting in an affirmative defense to the charge? I do not think that should be the state of the law. He should be able to go into court and attack the information while contending that he was not even in the county on the date in question. These defenses are not alternative defenses and may properly be presented together. A defendant should not be required to drop his alibi defense in order to preserve the issue of the sufficiency of the information for appeal. I fear that this is how that language may be interpreted.