IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. 1313-02






MICHAEL SIMS, Appellant



v.



THE STATE OF TEXAS





ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW


FROM THE TENTH COURT OF APPEALS


NAVARRO COUNTY






 Keller, P.J., delivered the opinion of the Court in which MEYERS,
KEASLER, HERVEY, HOLCOMB, and COCHRAN, J.J., joined. JOHNSON, J., filed a
dissenting opinion in which PRICE, J., joined. WOMACK, J. concurred in the result.


O P I N I O N 



 The question presented by this case is whether the transfer of drugs was "actual" or "constructive." 
We hold that sometimes both types of transfers can occur in the same transaction and that this is one of
those times.

I. BACKGROUND


 Mike Turner, an undercover law enforcement agent, met appellant at an outdoor site to buy crack
cocaine. When Turner asked "where it was at," appellant pointed to a foil-wrapped package lying in the
road near a tree and said "it's right there in that piece of foil." Turner retrieved the package and haggled
with appellant over the price. Appellant was paid $480 for the cocaine.

 Appellant was subsequently indicted for, and convicted of, delivery of cocaine by "constructive
transfer." On appeal, he contended that the evidence was legally insufficient to support his conviction
because the evidence showed an actual transfer rather than a constructive transfer. Relying upon Queen
v. State, (1) the Court of Appeals held that appellant had indeed effected a constructive transfer. (2) In so
holding, the Court of Appeals declined to follow Houston (3) and Texarkana (4) decisions that held that the
relevant portion of Queen had been nullified by later cases. (5) Consequently, the Court of Appeals found
the evidence to be legally sufficient and affirmed the conviction. (6) 

II. ANALYSIS


A. The conflict


 Queen held that a constructive transfer can occur in at least two ways: (1) through an intermediary
("by entrusting [the contraband] to an associate or the postal service") and (2) by "plac[ing] the contraband
in a particular location and then advis[ing] the recipient of this location so that the recipient can retrieve the"
contraband in question. (7) The second method identified by Queen is at issue in the present case. Clearly,
the facts of this case show a transfer by that method. The question we confront is whether Queen
accurately describes this method as one of constructive transfer. 

 Two courts of appeals have held that Queen's characterization is not accurate. In Stolz, the
defendant placed marijuana on a fence post twenty feet from the buyer while the buyer watched. (8) Two
or three minutes later, the buyer retrieved the marijuana. (9) On appeal, the defendant argued that the
evidence was insufficient to show that an actual transfer occurred because the transfer was in fact a
constructive transfer. (10) The Houston Court of Appeals affirmed, holding that the transfer was an actual
transfer because "no other person or means" was used to transfer the marijuana between the two persons
involved. (11) The court then remarked that its holding contradicted "dictum" found in Queen. (12) However,
the Houston court found that this "dictum" was "neutralized" by subsequent "dictum" in Daniels v. State,
which stated: "[A constructive transfer] only requires that when the State alleges constructive transfer to
an alleged ultimate recipient, that the accused must have contemplated that his initial transfer would not be
the final transaction in the chain of distribution." (13) The Houston court found that Daniels required the
defendant to contemplate subsequent transfers beyond the initial transfer (i.e. subsequent transferees) for
a transaction to qualify as a constructive transfer, and because Queen's second method does not describe
the contemplation of subsequent transfers, Queen's second method does not describe a constructive
transfer. (14)

 In Warren, an undercover law enforcement agent met the defendant and asked, "Do you have
something for me?" (15) The defendant replied, "Yes, it's in the bathroom on top of the toilet." (16) The
undercover agent then retrieved cocaine placed in the bathroom. (17) Relying upon Queen, the defendant
alleged on appeal that the evidence was insufficient to show an actual delivery because it showed a
constructive delivery. (18) The Texarkana court held that Queen's definition of constructive delivery was
superseded by Nevarez v. State, where this Court indicated that an actual delivery was accomplished by
"nothing more than making a thing available to another, placing it within his reach, notwithstanding there is
no actual handing of the thing from one person to another." (19) Holding that an actual transfer did not require
that the seller manually place the contraband in the hands of the buyer, the Texarkana court affirmed the
conviction. (20)

B. Resolution


 The conflict posed by the courts of appeals is more apparent than real. The present case involves
both a constructive transfer and an actual transfer. The constructive transfer occurred when appellant
informed the undercover officer of the cocaine's location. The actual transfer occurred when the
undercover officer actually retrieved the contraband. To explain how this can be so, we first turn to our
decision in Rasmussen v. State. (21)

1. The roots of Queen


 In Rasmussen, we addressed the meaning of the term "constructive transfer," in the context of a
delivery offense, for the first time. (22) We concluded that the term was derived from the Uniform Controlled
Substances Act of 1970. (23) As a consequence, we looked to other jurisdictions for guidance. (24) 

 We discussed the holdings of three jurisdictions, each involving a distinct set of circumstances held
to be a constructive transfer. (25) The first was a West Virginia case involving a transfer effectuated by
another person (i.e. an intermediary) under the direction of the defendant. (26) In that case, State v. Ellis,
the West Virginia Supreme Court of Appeals interpreted "constructive transfer" to mean "the transfer of
a controlled substance either belonging to an individual or under his control by some other person or agency
at the instance or direction of the individual accused of such a constructive transfer." (27) The second was
a Nebraska case in which the defendant instructed an undercover officer to retrieve the contraband from
a wastebasket. (28) Holding that the transaction in question was a "constructive transfer," the Supreme Court
of Nebraska remarked: "it is not necessary for the State to show actual physical transfer of a controlled
substance from the defendant. The statutory definition of delivery clearly encompasses more than actual,
direct transfers. It includes constructive and indirect transfers as well." (29) The third was a New Mexico
case where a controlled substance was mailed to the recipient. (30) The New Mexico Court of Appeals held:
"Placing the controlled substance in the mail had the effect of turning the controlled substance over to an
agent for delivery. This amounts to a constructive transfer." (31) Of interest to the issue at hand is the New
Mexico court's discussion immediately preceding the holding quoted in Rasmussen:

"The delivery (of a check) to the post office (for final delivery to the addressee) is a
constructive and technical delivery." The deposit of an insurance policy in the mail,
addressed to the insured, is a constructive delivery to the insured. Compare the effect of
mailing or shipping in unilateral contracts. The statement of facts is to the effect that
defendant mailed the controlled substance to the juvenile. If this is true, defendant selected
the mails as his delivery agent. If properly mailed, there was a presumption of delivery. (32)

 

At least some of this discussion indicates that a constructive delivery occurs when an item is deposited in
the mail, even though the item has not yet been received by the intended transferee.

 We pointed to a common element in all of these cases: "prior to delivery, the substance involved
was directly or indirectly under the defendant's control." (33) In response to the State's contention that there
was a constructive transfer, we held that the State failed to show that the defendant exercised direct or
indirect control over the contraband - a necessary precondition for showing an actual or constructive
transfer (absent the law of parties). (34)

 The Rasmussen opinion did not say it was adopting the entire holdings of these out-of-state
jurisdictions concerning the meaning of "constructive transfer." Even if it had, none of those cases can be
interpreted to clearly hold that an intermediary is essential to establishing a constructive transfer. Ellis
comes closest, but the opinion refers to transfer via another "person or agency" - the reference to agency
raising the possibility of circumstances broader than the action of an intermediary. By contrast, the
Nebraska case involved circumstances materially identical to the case at bar; it clearly held that an
intermediary is not necessary to effectuate a constructive transfer. And the New Mexico case also lends
support to finding a constructive transfer in the case at bar by indicating that a constructive transfer may be
complete even though the recipient has not yet received the contraband. We will discuss later the
significance of an incomplete actual transfer being a completed constructive transfer. 


2. Queen's holding


 Now we turn to Queen. In that case, the defendant moved to set aside the indictment for failing
to specify which of the three types of delivery (actual transfer, constructive transfer, offer to sell) the State
would rely upon for conviction. (35) The indictment specified that the defendant effected delivery by
"transferring the said marijuana into a motor vehicle within the care and control and custody of the said Ben
Neel and by transferring the said marijuana to the actual custody of the said Ben Neel." (36) The Court held
that the indictment alleged both an actual and a constructive transfer - the constructive transfer being the
delivery of marijuana to the recipient's motor vehicle. (37) The Court further found that the constructive nature
of the transfer was confirmed by the evidence: the defendant drove Neel's automobile to the location of
the marijuana, loaded the marijuana onto the automobile, drove the automobile back to its original location,
and returned to Neel's house and handed him the keys. (38)

 As we have already stated, Queen noted the existence of two types of constructive transfers: (1)
a transfer through an intermediary, and (2) a transfer effected by telling the recipient where the contraband
is located. (39) In citing these two methods, Queen relied upon Rasmussen. A close examination of Queen's
articulation of these methods reveals that neither requires a completed actual transfer. In the first method,
a constructive transfer to the intended recipient occurs "by entrusting the narcotics to an associate or the
postal service for the delivery of the recipient." (40) The act of "entrusting" appears to be the act that
completes the constructive transfer. The contraband is entrusted "for" delivery to the recipient, but nothing
is said of actual delivery to the recipient being completed. In the second method, a constructive transfer
occurs when the actor "place[s] the contraband in a particular location and then advise[s] the recipient of
this location so that the recipient can retrieve the narcotics." (41) The constructive transfer appears to occur
upon the act of advising the recipient, with the purpose of the advice being to enable the recipient to retrieve
the contraband. Again, the language of the opinion does not appear to require a completed actual transfer
to the recipient. And in fact, the opinion's application of law to the facts shows a constructive transfer
where no actual transfer had yet taken place. According to the Court in Queen, the constructive transfer
occurred in that case when the contraband was placed in the recipient's motor vehicle, or at the latest,
when the defendant returned the recipient's car keys. The recipient did not yet have physical possession
of the contraband. (42) 

 The courts of appeals' analyses of Queen in Stolz and Warren, and perhaps in the present case,
assume that a completed actual transfer must occur for there to be a constructive transfer. Queen made
no such assumption, and as will be discussed below, such an assumption would be incorrect. Further, we
disagree with the Houston court's conclusion in Stolz that Queen's pronouncement concerning the second
method of constructive delivery was dictum. Queen held that the indictment was sufficiently specific
because it alleged an actual transfer and a constructive transfer. The only constructive transfer involved in
that case was the transfer of contraband from the defendant to the recipient's automobile - a transfer that
did not involve an intermediary. 

3. Did later cases nullify Queen?


 The next important case to consider is Daniels. Daniels discussed Queen but did not criticize any
aspect of the opinion. (43) However, the Court did examine in further depth the meaning of "constructive
transfer." Initially, the Court observed that the term "constructive transfer" is "not defined by the
Legislature for the purpose of the Controlled Substances Act, the Penal Code, or elsewhere." (44) The Court
then held that the term should be given its plain or common meaning. (45) To ascertain the term's common
meaning, the Court consulted one dictionary and two law dictionaries. Ballentine's Law Dictionary defined
delivery generally, as "a handing over; the surrender of possession to another" and observed that: "For
some purposes, a delivery is accomplished by nothing more than making a thing available to another,
placing it within his reach, notwithstanding there is no actual handing of the thing from one person to
another." (46) No distinction between actual and constructive transfer appears in this definition. Of more
interest, however, are the remaining two dictionaries' definitions provided, which specifically addressed
constructive transfers. 

 Black's Law Dictionary defined "delivery" as: "The act by which the res or substance thereof is
placed within the actual or constructive possession or control of another." (47) Black's further distinguished
between actual and constructive delivery - the main difference centering on whether real possession has
been conferred on the transferee:

Actual delivery consists in giving real possession to the vendee or his servants or special
agents who are identified with him in law and represent him. It is a formal immediate
tradition of the property to the vendee.


Constructive delivery is a general term, comprehending all those acts which, although not
truly conferring a real possession of the thing sold on the vendee, have been held, by
construction of law, equivalent to acts of real delivery. (48)


The Court also quoted a definition of "constructive delivery" found in Webster's Third New International
Dictionary: "a delivery not accompanied by an actual transfer of possession of the property delivered yet
recognized as having been intended by the parties and as sufficient in law." (49)

 The Court then discussed the Rasmussen opinion. (50) In that discussion, the Court observed that
Rasmussen reviewed three out-of-state cases and gleaned a common element from those cases: "that prior
to delivery the substance involved was directly or indirectly under the defendant's control." (51) One of the
definitions discussed in Rasmussen, and then in Daniels, was the definition found in Ellis, which indicated
that a constructive transfer was a transfer effectuated by an intermediary of some sort. (52) Daniels
emphasized that Rasmussen did not adopt the Ellis definition: "The Rasmussen Court did not, repeat, did
not adopt the definition of 'constructive transfer' as set out in Ellis, although later cases seem to be
confused on this point. All it did was to glean a common element from the out-of-state cases mentioned
in the opinion." (53)

 In fact, the definitions given in Daniels all point to constructive transfer as a type of transfer that
does not vest actual possession in the transferee. Rather, constructive transfer involves a legal substitute
for actual possession. This approach is the one taken in civil cases, and sometimes arises in the use of
deeds to transfer property. The grantor of the property places the deed in the hands of a third party for
the benefit of a grantee or holds the property while manifesting an intent that the property belong to the
grantee. This approach was articulated by the United States Supreme Court over a century ago:
"Constructive delivery may and does exist where the grantor, in the exercise of his proper authority, places
the deed in the hands of a stranger for the use of the grantee, or even in some cases where he retains
possession, at the same time sufficiently manifesting his intention to treat it as having passed the
title to the grantee." (54) 

 The Texas Supreme Court has articulated a common example of constructive delivery by transfer
to a third party: recording a deed at an official place designated for property filings (e.g. the county clerk): 

It is, of course, true that a deed of trust to be effective must be delivered, but we are of the
opinion that a constructive delivery was proven by the undisputed evidence. "If the
mortgage is made in pursuance of a previous agreement of the parties to place a mortgage
on a specific property, which the mortgage[e] has agreed to accept, then the act of the
mortgagor in filing it for record in the proper office is a sufficient delivery of it."


***



See also the following authorities which hold that the filing for record by the grantor at the
request or with the consent of the grantee or mortgagee amounts to a constructive
delivery. (55)


Under this rule, the beneficiary receives title even though he did not obtain possession of the deed. 
Conveying the deed to the recording agency with the intent that the beneficiary receive title was sufficient
by itself to effectuate constructive delivery.

 In Brown v. Brown, the Texas Supreme Court addressed whether a husband had delivered a real
estate deed to his wife. (56) The Court cited a case in which constructive delivery was found when a member
of a law firm conveyed title to land to the law firm but retained possession of the deed. (57) Because the
grantor was a member of the firm, he had authority to possess the deed on the firm's behalf. (58) Similarly,
the husband had authority to possess the deed on his wife's behalf, and if he signed the deed before
attesting witnesses, then delivery was complete even though the husband retained possession. (59) The Texas
Supreme Court remarked that "the question is one of intention, to be determined from the facts and
circumstances preceding, attending and following the transaction." (60) Likewise, in civil cases Texas courts
of appeals have held that a constructive delivery occurs when the transferor sufficiently manifests his intent
that the property belong to the transferee even though the transferee does not obtain possession (61) and even
if a third party is not involved in the transaction. (62) 

 There is in fact no specialized "criminal" meaning for the term "constructive transfer." The
dictionary definitions given in Daniels are general ones, geared at least as much (and probably more)
toward civil cases as toward criminal cases. We have noted that our construction of the parallel term
"actual transfer" is "consistent with its general understanding in the civil context." (63) In a concurring opinion
in Conaway v. State, Judge Clinton cited a civil case - Fox v. Young - to illustrate the concept of
constructive delivery. (64) In that civil case, a person constructively delivered a doughnut machine to a
creditor - without moving the machine from the café in which it was situated - by writing a letter stating that
the debtor did "herewith tender and do deliver to you possession" of the machine. (65) The definition Judge
Clinton was illustrating was the same Black's Law definition of constructive delivery later quoted in
Daniels. (66) As in the present case, Fox involved a transferor who gave an instruction to the transferee
designed to enable the transferee to retrieve the property on its own, without the assistance of a third party.

 In two cases that pre-date this state's adoption of the Uniform Controlled Substances Act, this
Court has used the term "constructive delivery" in a manner conforming to the usage in Fox and other civil
cases. In Madison v. State, the defendant was convicted of stealing hogs. (67) Mistakenly believing that the
hogs belonged to the defendant, Grooms informed the defendant that the hogs had ranged into Grooms's
field. (68) Although the hogs actually belonged to a third party, the defendant called the hogs up and
purported to sell the hogs to Grooms. (69) The next day, Grooms put the hogs into his pen. (70) We held that
the defendant's calling up and selling the hogs constituted a constructive delivery to Grooms, even though
Grooms did not yet have possession:

In this case, though the hogs were in their accustomed range, yet they were gentle and
were called up by defendant or Grooms, and were right up at them, in their presence, and
could have been immediately driven off by either or both when defendant made his sale
and constructive delivery of them to Grooms. Under these circumstances, had not the
hogs been "taken," in legal contemplation, by defendant before the sale? He called them
up; this was exercising control over them certainly, and after they came up, and whilst they
were thus in his control, if he, knowing them not to be his property, sold and constructively
delivered them to Grooms, who afterwards took them into actual possession under the
purchase, it would in our opinion, bring the case fully within the rule quoted above from
Russell, viz: that "if the thief fraudulently procure a person innocent of any felonious intent
to take the goods for him, his offense will be the same as if he had taken the goods
himself." The appropriation, so far as defendant is concerned, was obvious, and the taking
did not rest solely upon the subsequent exercise of ownership and possession by
Grooms. (71) 


In Rountree v. State, the defendant and his nephew conspired to steal a calf from a third party. (72) They
agreed that the nephew would take the calf and tie it at a certain location, where appellant would arrive and
take possession. (73) This plan was carried out. (74) We found that a constructive delivery of the calf to
appellant occurred at the point the animal was tied:

It appears to us that when Eugene Rountree tied the animal at a place agreed upon
between him and appellant for the convenience of appellant to load it into his truck, that
same was a constructive delivery of the animal to appellant at the point where it was tied. (75)


Both Madison and Rountree involved a constructive delivery that was not facilitated by an intermediary
and was complete before any actual delivery had occurred. In Madison, the constructive delivery was
complete when the defendant told the transferee that the hogs were now his. In Rountree, the constructive
delivery was complete when the calf was placed in a pre-arranged location.

 Given the general definitions quoted in Daniels and the historical background of the term
"constructive delivery," we must disagree with the Stolz court's contention that Daniels articulated a rule
at odds with the second category of constructive transfer found in Queen. The relied upon passage in
Daniels, in its larger context, says:

In Gonzalez v. State, this Court held that a constructive transfer requires the transferor at
least be aware of the existence of the ultimate transferee before delivery. This does not
mean that the transferor need know the identity of or be acquainted with the ultimate
recipient. It only requires that when the State alleges constructive transfer to an
alleged ultimate recipient that the accused must have contemplated that his initial transfer
would not be the final transaction in the chain of distribution. (76) 


Gonzalez v. State, involved an indictment that alleged a transfer to a third party (i.e. not the immediate
transferee), but this Court found that there was no evidence that the defendant knew the controlled
substance was being purchased on behalf of a third party. (77) It is in this context that the passage in Daniels
must be read. The articulated rule applies only when the State attempts to obtain a conviction by alleging
a recipient that was not the immediate recipient of the contraband. Our conclusion is further supported by
the summary in Daniels of the rules applicable to constructive transfers:

1. Prior to an alleged delivery, the transferor must have either direct or indirect

 control of the substance transferred. Rasmussen, supra.


2. The transferor must know of the existence of the transferee. Gonzales [sic], supra. (78)


The point was not that the transfer must include an intermediary but that the transferor must have
knowledge of the transferee. When the transferee alleged is not the immediate transferee, then for the
evidence to be sufficient, the defendant must have contemplated that there would in fact be a third party
transferee. Daniels and Gonzalez did not hold that an intermediary was required for all constructive
transfers.

 We also disagree with the Warren court's contention that Nevarez undercut the holding in Queen. 
In Nevarez, a co-defendant slid a bag containing marijuana over to Pacheco, an undercover officer. (79) 
Pacheco then took the bag and tore it open, (80) but the co-defendant refused to permit the him to completely
remove the bag until after payment, which never occurred because the bust signal and arrest occurred
shortly thereafter. (81) This Court held that the defendant was properly convicted of an actual transfer
pursuant to the law of parties. (82) In its discussion, the Court cited a definition of "deliver" from Webster's
Ninth Collegiate Dictionary and the Ballentine's Law Dictionary definition of "delivery" quoted in Daniels. (83) 
While Nevarez did quote that part of Ballentine's that said a delivery can be accomplished by "making a
thing available to another, placing it within his reach," the Court did not apply that definition to the facts of
the case. (84) Instead, the Court held that "the 'actual transfer' of the marihuana occurred pursuant to the law
of parties the instant that Pacheco physically took and inspected the marihuana offered him by
appellant's co-defendant." (85) Despite the quote from Ballentine's, the Court did not say that sliding the
contraband toward the recipient was enough to effectuate an actual transfer. Even if it had, sliding
contraband close to the recipient is not the same as directing the recipient to contraband that is not
immediately within reach. It is true that a physical taking of the contraband completes an actual transfer,
but that does not exclude the possibility that a constructive transfer could occur beforehand, when the
defendant directs the recipient to retrieve the contraband.

4. Conclusion


 Queen was correct in holding that one method of constructive transfer is for the transferor to
instruct the recipient on the location of the contraband. If the contraband is already in place, the
constructive transfer is complete at the time the transferor gives the instruction. When the recipient retrieves
the contraband, there is then a completed actual transfer. While Stolz and Warren appear to have reached
the right result in each of their cases, since an actual transfer did take place, their conclusion that no
constructive transfer occurred is incorrect, and to the extent they so held, we disavow their reasoning. In
the present case, appellant constructively transferred the cocaine when he instructed the undercover officer
as to its location. The evidence is therefore sufficient to support a conviction for constructive transfer. That
the evidence also shows an actual transfer is of no consequence in this case.

 The judgment of the Court of Appeals is affirmed.

 KELLER, Presiding Judge

Date delivered: October 8, 2003

Publish 
1. 662 S.W.2d 338 (Tex. Crim. App. 1983).
2. Sims v. State, 82 S.W.2d 730, 732-734 (Tex. App.-Waco 2002).
3. Stolz v. State, 962 S.W.2d 81 (Tex. App.-Houston [1st Dist.] 1997).
4. Warren v. State, 15 S.W.2d 168 (Tex. App.-Texarkana 2000).
5. Sims, 82 S.W.3d at 733-734.
6. Id. at 734. Appellant had a second point of error that the Court of Appeals also rejected. 
Id. at 734-735. That second point of error is not before us.
7. 662 S.W.2d at 340. The Court remarked that there may be "other possible forms of
constructive transfer." Id.
8. 962 S.W.2d at 82.
9. Id.
10. Id.
11. Id.
12. Id. at 82-83.
13. Id. at 83 (quoting Daniels v. State, 754 S.W.2d 214, 221 (Tex. Crim. App. 1988)
(bracketed material in Stolz)).
14. Id.
15. 15 S.W.3d at 169.
16. Id.
17. Id.
18. Id. at 169-170.
19. Id. at 171 (quoting Nevarez v. State, 767 S.W.2d 766, 768 (Tex. Crim. App. 1989)).
20. Id. at 172.
21. 608 S.W.2d 205 (Tex. Crim. App. 1980)(opinion on State's motion for rehearing).
22. Id. at 209
23. Id.; see also Uniform Controlled Substances Act (1970), U.L.A., Vol. 9, Pt IV, §101(f)
(master ed. 1997).
24. Id. at 209.
25. Id. at 209-210.
26. Id. at 209 (citing State v. Ellis, 239 S.E.2d 670 (W. Va. 1977)).
27. Id. (quoting Ellis, 239 S.E.2d at 673).
28. Id. at 209-210 (discussing State v. Guyott, 239 N.W.2d 781 (Neb. 1976)).
29. Id. at 210 (quoting Guyott, 239 N.W.2d at 782).
30. Id. (citing State v. McHorse, 517 P.2d 75 (N.M. Ct. App. 1973)).
31. Id. (quoting McHorse, 517 P.2d at 78).
32. McHorse, 517 P.2d at 78 (citations omitted).
33. Rasmussen, 608 S.W.2d at 210.
34. Id.
35. 662 S.W.2d 339-340.
36. Id. at 340.
37. Id. at 341.
38. Id.
39. Id. at 340.
40. Id.
41. Id.
42. Of course, physical possession by the recipient is not necessarily required to establish an
actual transfer; in Heberling v. State, we held that it is enough to place the contraband in the hands of
the intended recipient's agents. 834 S.W.2d 350, 354 (Tex. Crim. App. 1992). Whether that holding
extends to placing the contraband inside the recipient's property, and if so, when such placement may
transfer possession (i.e. whether possession changes while the defendant still maintains control over the
recipient's property) are issues that we need not decide here. The present case does not involve those
complicating facts, and Queen was decided nearly a decade before Heberling, when it was not clear
whether an actual transfer could be accomplished other than by physical delivery of the contraband to
the recipient. See id. ("we now hold that an actual transfer or delivery, as commonly understood,
contemplates" delivery to the transferee's agents).
43. See Daniels, 754 S.W.2d at 218-219. 
44. Id. at 219.
45. Id. at 219-220.
46. Id. at 220.
47. Id. at 219 (quoting Black's Law Dictionary, 5th ed., pp. 385, 386 (1979)).
48. Id. at 219-220 (quoting Black's)(emphasis added).
49. Id. at 220 (quoting Webster's Third New Int'l Dic. (Unabridged Ed. 1961)).
50. Id. at 220-221.
51. Id.
52. Daniels, 754 S.W.2d at 220.
53. Id. at 221.
54. United States v. Schurz, 102 U.S. 378 (1880).
55. West v. First Baptist Church of Taft, 71 S.W.2d 1090, 1099 (Tex. 1934).
56. 61 Tex. 56 (1884).
57. Id. at 59.
58. Id.
59. Id. at 59-60.
60. Id. at 60.
61. Bullock v. Foster Cathead Co., 631 S.W.2d 208, 210 (Tex. App.-Corpus Christi 1982,
no writ)(assignment of pledged property delivered to creditor is a constructive delivery of the pledged
property); Emco Inc. v. Healy, 602 S.W.2d 309, 313 (Tex. Civ. App.-Texarkana 1980, no
writ)(stock issued by corporation on behalf of shareholder that is delivered to bank lienholder
constitutes constructive delivery to shareholder); Fletcher L. Yarbrough & Co. v. Texas & N.O. Ry.
Co., 226 S.W.2d 257, 259 (Tex. Civ. App.-Dallas 1949, writ ref'd), cert. denied, 340 U.S. 820
(1950)(delivery of bill of lading constitutes constructive delivery of the goods it represents).
62. Bullock, 631 S.W.2d at 210; Fletcher, 226 S.W.2d at 229.
63. Heberling, 834 S.W.2d at 354 n. 5.
64. Conaway v. State, 738 S.W.2d 692, 697-698 (Tex. Crim. App. 1987)(Clinton J.
concurring)(citing Fox v. Young, 91 S.W.2d 857 (Tex. Civ. App.-El Paso 1936, no writ)).
65. Conaway, 738 S.W.2d at 698 n. 4.
66. Id. at 697.
67. 16 Tex. Ct. App. 435 (1884).
68. Id. at 440.
69. Id.
70. Id.
71. Id. at 442-443.
72. 143 S.W.2d 942 (Tex. Crim. App. 1940).
73. Id. at 942.
74. Id.
75. Id. at 942-943.
76. Daniels, 754 S.W.2d at 221 (emphasis added, citation omitted).
77. 588 S.W.2d 574, 577 (Tex. Crim. App. 1979).
78. Daniels, 754 S.W.2d at 221-222.
79. 767 S.W.2d at 768.
80. Id.
81. Id. at 767-768.
82. Id. at 768.
83. Id.
84. Id.
85. Id. (emphasis added).